JESSE SBAIH & ASSOCIATES, LTD.
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel     (702) 896-2529
Fax    (702) 896-0529
Email: jsbaih@sbaihlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN,<br><br>           Plaintiff,<br>vs.<br><br>M.J. DEAN CONSTRUCTION, INC.; DOES I through X; AND ROE CORPORATIONS XI–XX, INCLUSIVE, inclusive;<br><br>           Defendant. | Case No.: 2:20-cv-01765-APG-EJY<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT, AND COUNTERMOTION FOR LEAVE TO AMEND THE COMPLAINT** |

COMES NOW Plaintiff Parnell Colvin ("Mr. Colvin" or "Plaintiff"), by and through his attorneys of record, Jesse Sbaih & Associates, Ltd., and hereby files this Opposition to Defendant's Motion to Dismiss Complaint (ECF No. 7) and Countermotion for Leave to Amend the Complaint.

This Opposition and Countermotion are made and based on the following Memorandum of Points and Authorities, the papers on file herein, and any oral argument that the Court may entertain.

DATED this 1st day of December, 2020.

                                                          JESSE SBAIH & ASSOCIATES, LTD.

                                      By     /s/ Ines Olevic-Saleh_____
                                                 Jesse M. Sbaih (#7898)
                                                 Ines Olevic-Saleh (#11431)
                                                 The District at Green Valley
                                                 170 South Green Valley Parkway, Suite 280
                                                 Henderson, Nevada 89012
                                                          *Attorneys for Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

As described in his Complaint, Mr. Colvin was subjected to deplorable conduct by Defendant M.J. Dean Construction, Inc. ("Defendant" or "M.J. Dean"), his former employer. Mr. Colvin, an African American gentleman, was subjected to ongoing harassment, humiliation, and discrimination including, but not limited being called the "N word", being forced to do jobs no one else was forced to do just for the sake of public humiliation, being asked to complete an unreasonable number of tasks, being repeatedly humiliated in front of other employees, and ultimately being unlawfully discharged.

In its Motion to Dismiss, Defendant attempts to trivialize its behavior and minimize Mr. Colvin's damages in an attempt to improperly dismiss a number of Mr. Colvin's claims.

Namely, contrary to Defendant's assertions, neither Mr. Colvin's claim for Negligent Infliction of Emotional Distress nor his claim for Negligent Hiring, Training and Supervision are preempted by the Nevada Industrial Insurance Act as there is no causal relationship between Mr. Colvin's injury and the nature of his work at M.J. Dean. Further, Mr. Colvin has sufficiently plead his injuries in order to maintain his causes of action for both negligent and intentional infliction of emotional distress.

Also, contrary to Defendant's downplay of the outrageousness of its behavior, Mr. Colvin has adequately plead that Defendant's actions were extreme and outrageous to sustain his Intentional Infliction of Emotional Distress claim. Moreover, Mr. Colvin has provided more than sufficient factual background to properly plead his claim for Negligent Hiring, Training and Supervision.

Finally, Mr. Colvin set forth the claims for Vicarious Liability/Respondeat Superior in a separate cause of action in order to highlight the theory of liability implicating M.J. Dean. However, if this Honorable Court considers that subject allegations should not be plead as a separate cause of action, Plaintiff respectfully requests leave to amend his Complaint to plead Vicarious Liability/Respondeat Superior as a theory of Defendant's liability under the appropriate individual causes of action.

///
///

## II.

## **BACKGROUND FACTS**

Mr. Colvin is an African American gentleman, a family man and a hard-worker who has been a long-time member of the Laborer's' International Union of North America, Local 872. ECF No. 1, ¶ 10.

On or about July 17, 2019, Mr. Colvin (an experienced laborer with years of experience working on various construction projects in Las Vegas and elsewhere) was hired by M.J. Dean for a position of a Concrete Laborer, to work at M.J. Dean's MSG Sphere project (the "Project"). *Id*., ¶ 11. Mr. Colvin was excited and grateful to have obtained such a position as it promised stable and long-term employment with a reputable employer and union pay, to allow him to support his family. *Id*., ¶ 12.

Mr. Colvin's immediate supervisor at the Project was Kevin Gutierrez ("Mr. Gutierrez"). *Id*., ¶ 13. Soon after meeting Mr. Colvin, Mr. Gutierrez expressed his displeasure with having to manage Mr. Colvin by telling him: "if you don't do what I say, you will get the fu.. out of here as fast as you came in." *Id*.

Mr. Colvin was shocked and dismayed at such an inappropriate and unwarranted welcome. *Id*., ¶ 14  However, Mr. Colvin appreciated an opportunity to work for M.J. Dean and decided to do his best to appease Mr. Gutierrez and to focus on doing his job. *Id*.

True to his initial message to Mr. Colvin, Mr. Gutierrez subjected Mr. Colvin to ongoing harassment, humiliation, and discrimination. *Id*., ¶ 15.

Specifically, Mr. Gutierrez frequently demanded that Mr. Colvin do various unnecessary tasks, he followed him around and scrutinized his work, sent him away from his assigned jobs at the Project to work with other crews, and made derogatory comments directly to Mr. Colvin. *Id*., ¶ 16.

For example, Mr. Gutierrez would demand that Mr. Colvin get on his hands and knees to clean up, which could have easily been done with available tools. *Id*., ¶ 17.   Mr. Gutierrez's demand that Mr. Colvin not use available tools was for the sole reason of humiliating and demeaning Mr. Colvin in front of other people. *Id*.

In addition, Mr. Gutierrez would never allow Mr. Colvin to work overtime at the Project. However, Mr. Gutierrez would routinely allow other employees (even those hired after Mr. Colvin) to work overtime. *Id*., ¶ 18. Moreover, Mr. Gutierrez would frequently give Mr. Colvin an unreasonable number of tasks which made it nearly impossible for Mr. Colvin to complete in a day. *Id*., ¶ 19. It was clear that Mr. Gutierrez was attempting to frustrate Mr. Colvin and cause him to quit. *Id*., ¶ 20.

Mr. Colvin was seriously disturbed by Mr. Gutierrez's mistreatment and harassment. *Id*., ¶ 21. Mr. Colvin invariably dreaded any interaction with Mr. Gutierrez. *Id*. However, Mr. Colvin, in need of a job to put food on the table and grateful to work with M.J. Dean, hoped that Mr. Gutierrez would stop mistreating him and he continued to focus his efforts on doing his job the best way possible. *Id*., ¶ 22.

In or about the beginning of November 2019, Mr. Colvin was on the deck, cleaning and removing wire out of the beams when Mr. Gutierrez approached him. *Id*., ¶ 23. Mr. Gutierrez asked Mr. Colvin what he was doing. *Id*. Mr. Colvin explained what tasks he had completed and what he was doing. *Id*.

Intimidated and exasperated by Mr. Gutierrez's mistreatment and constant scrutiny, Mr. Colvin asked Mr. Gutierrez why he is constantly "picking" on him and making his job so difficult. *Id*., ¶ 24. Mr. Gutierrez had no response for Mr. Colvin that day. *Id*., ¶ 25. However, the next day, Mr. Gutierrez came to Mr. Colvin and apologized for his prior behavior saying he will "start over". *Id*.

Despite his promise, on or about November 14, 2019, Mr. Gutierrez, as he has frequently done before, came to Mr. Colvin and instructed him to leave his usual area of work and join another crew. *Id*., ¶ 26. Mr. Colvin, frustrated at constantly being displaced for no legitimate reason, said that this is his usual area where he completes his tasks. *Id*.

In response, Mr. Gutierrez said, "I am your fu..ing boss and you do as I say!" *Id*., ¶ 27. Once again, Mr. Colvin inquired why Mr. Gutierrez is mistreating him. Mr. Gutierrez responded, "I am not fu..ing doing this, I am going to give you your two fucking checks." *Id*., ¶ 28.

Mr. Colvin, very concerned about losing his job for no reason, asked Mr. Gutierrez, why he continues to "mess" with him. *Id*., ¶ 29. In response, Mr. Gutierrez threw his hands up and said, "I am done with you NIG..R!!!" and walked away. *Id*.

Mr. Colvin was shocked and traumatized. *Id*., ¶ 30. He was humiliated and degraded. *Id*. He was in disbelief that in this day and age, in light of growing awareness of the horrific consequences of racial discrimination, he was still subjected to such demeaning conduct. *Id*.

On that same day (November 14, 2019), Mr. Colvin filled out and submitted an Employee Incident Investigation Report where he described the disturbing interaction with Mr. Gutierrez (the "Internal Complaint"). *Id*., ¶ 31.

Upon learning of the incident, John Thomason, a director at M.J. Dean, advised Mr. Colvin that Mr. Gutierrez would be fired. *Id*., ¶ 32. Outrageously, rather than terminating Mr. Gutierrez to rid M.J. Dean of a toxic and discriminatory environment, M.J. Dean decided to move Mr. Colvin to work for Dave Moody, also a yard supervisor. *Id*., ¶ 33.

To add insult to injury, contrary to Mr. Thomason/M.J. Dean's representations to Mr. Colvin, Mr. Gutierrez's employment was not terminated. *Id*., ¶ 34. Instead, on or about April 4, 2020, Mr. Colvin's employment was terminated. *Id*., ¶ 35.

Specifically, at some point just prior to Mr. Colvin's discharge, Mr. Moody went to work at a different job site at the Project. *Id*., ¶ 36. Despite not being Mr. Colvin's supervisor and despite M.J. Dean's knowledge of Mr. Gutierrez's mistreatment, harassment, and discriminatory conduct of Mr. Colvin, M.J. Dean placed Mr. Gutierrez in charge of Mr. Colvin again. *Id*., ¶ 37.

At that time, Mr. Gutierrez jumped at the opportunity to retaliate against Mr. Colvin by terminating Mr. Colvin's employment under the ruse that there was "lack of work." *Id*., ¶ 38. However, M.J. Dean's and Mr. Gutierrez's "lack of work" justification for terminating Mr. Colvin's employment was brazenly inaccurate. *Id*., ¶ 39.

Indeed, the non-African American laborers who became employed by M.J. Dean after Mr. Colvin and had less seniority (Gilbert and Julian) were not terminated due to "lack of work." *Id*., ¶ 40. In fact, a couple of non-African American laborers who were previously laid off by M.J. Dean from other areas of the project were called back to do Mr. Colvin's job (Andy and Lillow [sic]). *Id*.

Moreover, the subsequent job postings at the Union clearly indicated that M.J. Dean was looking for laborers. *Id*., ¶ 41.

Clearly, there was no lack of work at M.J. Dean and Mr. Colvin was fired in retaliation for his complaints of racial discrimination. *Id*., ¶ 42.

### III.

### LEGAL ARGUMENT

*1. Standard of Review for Motion to Dismiss*

Like its Nevada state counterpart, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.*" Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (emphasis added).

In considering whether a complaint is sufficient to state a claim, this Court must take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). To survive a motion to dismiss, Plaintiff need only plead facts for which a particular defendant may plausibly be liable for the alleged conduct. *See Bell*, 550 U.S. at 554. Indeed, the Supreme Court further clarified that, in order to avoid a motion to dismiss, the complaint need only contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

A.  *Nevada Industrial Insurance Act Does not Preempt Plaintiff's Claims for Negligent Infliction of Emotional Distress and Negligent Hiring, Training and Supervision*

Under N.R.S. 616A.020, the rights and remedies provided by the Nevada Industrial Insurance Act (NIIA) "for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive." However, the "NIIA does not make an employer ...

absolutely immune from suit for any and all on-the-job injuries suffered by its employees." ***Fusco v. Tropicana Las Vegas, Inc*.**, No. 2:13-CV-01723-APG, 2014 WL 4843677, at *3 (D. Nev. Sept. 26, 2014) (internal citations omitted).

An "injury" under the statute means "a sudden and tangible happening of a traumatic nature, producing immediate or prompt result[,] which is established by medical evidence[.]" N.R.S. § 616A.265(1). "Accident" is defined as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." N.R.S. § 616A.030.

"[I]njuries that fall within the ambit of the NIIA's coverage are those that both arise out of the employment ***and*** occur within the course of that employment. **Wood v. Safeway, Inc.,** 121 Nev. 724, 733, 121 P.3d 1026, 1032 (2005) (emphasis added). An injury "arise[s] out of one's employment when there is a causal connection between the employee's injury and the nature of the work or workplace." ***Id***. An injury occurs within the course of the employment if it occurs "at work, during working hours, and while the employee is reasonably performing his or her duties." ***Id***.

In this matter, Mr. Colvin did not suffer a "sudden and tangible happening of a traumatic nature". Instead, Mr. Colvin was subjected to systematic and ongoing harassment and discrimination precipitating other causes of action as alleged. Also, M.J. Dean's actions towards Mr. Colvin could not be characterized as an accident.

Moreover, Mr. Colvin was hired by M.J. Dean for a position of a Concrete Laborer, to work at M.J. Dean's MSG Sphere project. There is no causal connection between Mr. Colvin's injuries resulting from him being a victim of negligent infliction of emotional distress and negligent hiring training and supervision, and the nature of the work or workplace (construction and labor). As such, Mr. Colvin's claims for Negligent Infliction of Emotional Distress and Negligent Hiring, Training and Supervision are not preempted by the NIIA and should not be dismissed.

    **B.**    **Mr. Colvin's Claim for Negligent Infliction of Emotional Distress Should not be Dismissed**

Nevada law provides a "direct" theory of negligent infliction of emotional distress, where victims of a defendant's negligent acts can recover damages for emotional distress. ***See Shoen v.***

*Amerco, Inc.,* 111 Nev. 735, 748, 896 P.2d 469, 477 (1995). To state a claim for "direct" negligent infliction of emotional distress, a plaintiff must allege: (1) the defendant acted negligently, (2) either a physical impact or, in the absence of a physical impact, proof of a serious emotional distress causing physical injury or illness, and (3) actual or proximate causation. *See Barmettler v. Reno Air, Inc*., 956 P.2d 1382, 1387 (Nev. 1998).

In its Motion, Defendant does not deny that it acted negligently towards Mr. Colvin. Defendant's sole issue with Mr. Colvin's fulfilment of elements of NIED, is a contention that Mr. Colvin did not suffer a physical injury and that "[a]llegations of insomnia and general physical or emotional discomfort are insufficient." ECF No. 7, p.6:11-25.

However, in Nevada, "[e]ven without the obvious physical contact, Plaintiff might alternatively be able show that she suffered severe emotional distress" for the purpose of alleging a claim for NIED. Burns v. Mayer, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001).

As evidenced by Mr. Colvin's Complaint, Mr. Colvin suffered severe emotional distress which "included, among others, humiliation, depression, anxiety, fear and trouble sleeping" ECF No. 1. As such, Mr. Colvin alleged not just insomnia and general discomfort, but specific ailments which no one can deny constitute serious and severe emotional distress sufficient to satisfy the subject element of Mr. Colvin's NIED claim.

Accordingly, Mr. Colvin has sufficiently alleged his claim for Negligent Infliction of Emotional Distress and same should not be dismissed.

### C. *Mr. Colvin's Claim for Intentional Infliction of Emotional Distress Should not be Dismissed*

To state a claim for intentional infliction of emotional distress ("IIED") the plaintiff must allege the following: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith,* 115 Nev. 372, 989 P.2d 882, 886 (1999) (internal citations omitted).

"[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car,* 114 Nev. 1, 953 P.2d 24, 26 (1998) (internal quotation marks and citation omitted).

The Nevada Supreme Court has referred to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law. *See, e.g., Olivero v. Lowe,* 116 Nev. 395, 995 P.2d 1023, 1027 (2000); *Selsnick v. Horton,* 96 Nev. 944, 620 P.2d 1256, 1257 (1980). The Restatement states that extreme and outrageous conduct may arise "from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." Restatement (Second) of Torts § 46 cmt. f. Extreme and outrageous conduct also "may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id*. cmt. e.

In its Motion, Defendant makes a laudable attempt to trivialize the despicable nature of its conduct towards Mr. Colvin. Mr. Gutierrez called Mr. Colvin the "N word". Mr. Gutierrez called Mr. Colvin one of the most contemptuous words in the English language which stands for profound hate, disdain, and disrespect. Mr. Gutierrez subjected Mr. Colvin to ongoing harassment, humiliation and discrimination. Mr. Gutierrez frequently demanded that Mr. Colvin do various unnecessary tasks, he followed him around and scrutinized his work, sent him away from his assigned jobs to work with other crews, and made other derogatory comments directly to Mr. Colvin.

Mr. Gutierrez would demand that Mr. Colvin get on his hands and knees to clean up, which could have easily been done with available tools. Mr. Gutierrez's demand that Mr. Colvin not use available tools was for the sole reason of humiliating and demeaning Mr. Colvin in front of other people.

Everyone saw this and no one did anything. It was only when Mr. Colvin made a formal complaint that M.J.Dean made a feeble attempt at taking action by placing Mr. Colvin under supervision of another employee. However, the change was only in form and not in substance as Mr. Gutierrez ultimately remerged as Mr. Colvin's supervisor who caused Mr. Colvin to be fired from his job with M.J. Dean. On the other hand, based on information and belief, Mr. Gutierrez suffered no consequences of his appalling behavior.

Indeed, Mr. Gutierrez must have known of the humiliating effect that an "N word" uttered to his African-American subordinate will have. Moreover, as his superior, Mr. Gutierrez had an actual authority over Mr. Colvin and had power to affect Mr. Colvin's interests which was demonstrated by Mr. Colvin's discharged from his employment with M.J. Dean.

The fact that Defendant could call the above anything other than extreme, outrageous and done with intent of, or reckless disregard for causing emotional distress to Mr. Colvin, is outrageous in itself.

As already mentioned, Mr. Colvin suffered "severe and extreme emotional distress which included, among others, humiliation, depression anxiety, fear and trouble sleeping." ECF No. 1, ¶ 72. As such, Mr. Colvin alleged not just insomnia and general discomfort, but specific ailments which no one can deny constitute serious and severe emotional distress sufficient to satisfy the subject element of Mr. Colvin's IIED claim.

Based on the foregoing, Mr. Colvin's claim for Intentional Infliction of Emotional Distress should not be dismissed.

### D. *Plaintiff's Countermotion for Leave to Amend Complaint to include allegation of Vicarious Liability/Respodeat Superior as a Theory of Liability*

The doctrine of respondeat superior provides that employers are vicariously liable for the actions of their employees within the scope of employment. *Mitschke v. Gosal Trucking, LDS.*, No. 2:14-CV-1099 JCM VCF, 2014 WL 5307950, at *3 (D. Nev. Oct. 16, 2014). It its Motion, Defendant does not deny that M.J. Dean is vicariously liable for the actions of its employees implicated in the Plaintiff's Complaint. Therefore, M.J. Dean does not dispute the substance of the Plaintiff's Vicarious Liability/Respondeat Superior allegations.

The only issue M.J. Dean has with Plaintiff's Fourth Cause of Action is that it was alleged as a separate cause of action. In an effort to highlight the theory of liability implicating M.J. Dean, Plaintiff set forth his allegations of Vicarious Liability/Respondeat Superior as a separate cause of action. Plaintiff does not oppose to dismissal of Plaintiff's allegations for Vicarious Liability/Respondeat Superior as a separate cause of action as long as Plaintiff's theory of liability

against M.J. Dean remains intact. For that purpose, Plaintiff respectfully requests leave to amend his Complaint.

Fed.R.Civ.P. 15(a) provides that a "court should freely give leave when justice so requires." Rule 15(a) "mandates a liberal reading of the rule's direction for 'free' allowance: motions to amend are to be granted in the absence of a 'declared reason' 'such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party ..., futility of amendment, etc.' " ***Ward Elecs. Serv., Inc. v. First Commercial Bank***, 819 F.2d 496, 497 (4th Cir.1987) (internal citations omitted).

Accordingly, Plaintiff hereby makes a countermotion for leave to amend his Complaint as set forth in the proposed Amended Complaint attached hereto as ***Exhibit 1.***

### ***E.    Mr. Colvin's Claim for Negligent Hiring, Training and Supervision Should not be Dismissed***

To succeed on a claim for negligent hiring, training, supervision, and/or retention under Nevada law, a plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, training, and/or supervising an employee even though defendant knew or should have known of the employee's dangerous propensities; (3) the breach caused the plaintiff's injuries; and (4) damages. ***Hall v. SSF, Inc.***, 930 P.2d 94,99 (Nev. 1996).

In its Motion, Defendant suggests that Plaintiff must provide every single detail regarding the subject cause of action in his Complaint. Defendant forgets that to survive a motion to dismiss, Plaintiff need only plead facts for which a particular defendant may plausibly be liable for the alleged conduct. ***See Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).

In its Motion, Defendant focuses on few of Plaintiff's allegations while failing to mention the others. Namely, in the section for the Seventh Claim for Relief (Negligent Hiring, Training and Supervision), in paragraph 81, Plaintiff incorporates by reference all of the preceding paragraphs. As such, not only does the Plaintiff allege all of the elements necessary for the subject claim (paragraphs 76-80), but he also offers additional factual background provided by his painstaking recitation of facts giving rise to all of his claims.

As such, Plaintiff's Complaint clearly describes that despite M.J. Dean's knowledge of Mr. Gutierrez's repeated harassment of Mr. Colvin, it chose to retain him as an employee which enabled him to deliver a final employment blow to Mr. Colvin by firing him.  Moreover, the Complaint lists other M.J. Dean employees which were implicated in M.J. Dean's despicable conduct and whose hiring, retention and supervision gives rise to Mr. Colvin's allegations.

Therefore, Plaintiff has more than sufficiently plead his cause of action for negligent hiring training and supervision and this cause of action should not be dismissed.  In the unlikely event this Honorable Court finds that Plaintiff should re-iterate all of the applicable facts for the purpose of alleging this cause of action, Plaintiff respectfully requests that this Honorable Court grant leave so that Plaintiff can amend his Complaint accordingly.

## IV.

## **CONCLUSION**

Based on the foregoing, Mr. Colvin respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss in its entirety.  In the event this Honorable Court finds that Plaintiff needs to re-iterate his factual allegations in the Negligent Hiring, Training and Supervision cause of action, Plaintiff respectfully requests the leave of court to amend his complaint accordingly.

Moreover, Plaintiff respectfully requests that this Honorable Court grant leave  in order for him to amend his complaint to add the allegations for Vicarious Liability/Respondeat Superior as a theory of liability as set forth in the proposed Amended Complaint attached hereto as ***Exhibit 1***.

DATED this 1st day of December, 2020.

JESSE SBAIH & ASSOCIATES, LTD.

By   /s/ Ines Olevic-Saleh
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP Rule 5(b), I certify that I am an employee of the law firm of Jesse Sbaih & Associates, Ltd., and that on this 1st day of December, 2020, I caused **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT, AND COUNTERMOTION FOR LEAVE TO AMEND THE COMPLAINT** to be served via electronic service to the following:

Martin A. Little, Esq.
Robert L. Rosenthal, Esq.
Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy, Suite 1000
Las Vegas, NV 89169
  *Attorneys for Defendant*

                    /s/ Ines Olevic-Saleh
         An employee of Jesse Sbaih & Associates, Ltd.