JESSE SBAIH & ASSOCIATES, LTD.
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel     (702) 896-2529
Fax    (702) 896-0529
Email: jsbaih@sbaihlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN,<br><br>Plaintiff,<br>vs.<br><br>M.J. DEAN CONSTRUCTION, INC.; DOES I through X; AND ROE CORPORATIONS XI–XX, INCLUSIVE, inclusive;<br><br>Defendant. | Case No.: 2:20-cv-01765-APG-EJY<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

COMES NOW Plaintiff Parnell Colvin ("Mr. Colvin" or "Plaintiff"), by and through his attorneys of record, Jesse Sbaih & Associates, Ltd., and hereby files this Opposition to Defendant's Motion to Dismiss Plaintiffs First Amended Complaint.

This Opposition is made and based on the following Memorandum of Points and Authorities, the papers on file herein, and any oral argument that the Court may entertain.

DATED this 4th day of June, 2021.

JESSE SBAIH & ASSOCIATES, LTD.

By    /s/ Ines Olevic-Saleh_____
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
*Attorneys for Plaintiff*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In its Motion to Dismiss Plaintiff's First Amended Complaint Defendant M.J. Dean Construction, Inc. ("Defendant" or "M.J. Dean") tries to impose on Plaintiff's First Amended Complaint a standard much higher than the one for review upon a motion to dismiss. Indeed, Defendant appears to insist on reviewing the Plaintiffs' First Amended Complaint under the rigorous test of FRCP 9 (b) as it alleges that the Plaintiff must re-iterate every single fact and allege in great detail the subject cause of action.

Contrary to Defendant's attempts, the Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." ***Conley v. Gibson***, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). An exhaustive chronicle is not required.

Therefore, Defendant's Motion to Dismiss Plaintiff's cause of action for Negligent Training, Hiring, and Supervision should not be dismissed.

## II.

## BACKGROUND FACTS

Mr. Colvin is an African American gentleman, a family man and a hard-worker who has been a long-time member of the Laborer's' International Union of North America, Local 872. ECF No. 21, ¶ 10.

On or about July 17, 2019, Mr. Colvin (an experienced laborer with years of experience working on various construction projects in Las Vegas and elsewhere) was hired by M.J. Dean for a position of a Concrete Laborer, to work at M.J. Dean's MSG Sphere project (the "Project"). *Id*., ¶ 11. Mr. Colvin was excited and grateful to have obtained such a position as it promised stable and long-term employment with a reputable employer and union pay, to allow him to support his family. *Id*., ¶ 12.

Mr. Colvin's immediate supervisor at the Project was Kevin Gutierrez ("Mr. Gutierrez"). *Id*., ¶ 13. Soon after meeting Mr. Colvin, Mr. Gutierrez expressed his displeasure with having to manage

Mr. Colvin by telling him: "if you don't do what I say, you will get the fu.. out of here as fast as you came in." *Id*.

Mr. Colvin was shocked and dismayed at such an inappropriate and unwarranted welcome. *Id*., ¶ 14  However, Mr. Colvin appreciated an opportunity to work for M.J. Dean and decided to do his best to appease Mr. Gutierrez and to focus on doing his job. *Id*.

True to his initial message to Mr. Colvin, Mr. Gutierrez subjected Mr. Colvin to ongoing harassment, humiliation, and discrimination. *Id*., ¶ 15.

Specifically, Mr. Gutierrez frequently demanded that Mr. Colvin do various unnecessary tasks, he followed him around and scrutinized his work, sent him away from his assigned jobs at the Project to work with other crews, and made derogatory comments directly to Mr. Colvin. *Id*., ¶ 16.

For example, Mr. Gutierrez would demand that Mr. Colvin get on his hands and knees to clean up, which could have easily been done with available tools. *Id*., ¶ 17.   Mr. Gutierrez's demand that Mr. Colvin not use available tools was for the sole reason of humiliating and demeaning Mr. Colvin in front of other people. *Id*.

In addition, Mr. Gutierrez would never allow Mr. Colvin to work overtime at the Project. However, Mr. Gutierrez would routinely allow other employees (even those hired after Mr. Colvin) to work overtime. *Id*., ¶ 18. Moreover, Mr. Gutierrez would frequently give Mr. Colvin an unreasonable number of tasks which made it nearly impossible for Mr. Colvin to complete in a day. *Id*., ¶ 19.   It was clear that Mr. Gutierrez was attempting to frustrate Mr. Colvin and cause him to quit. *Id*., ¶ 20.

Mr. Colvin was seriously disturbed by Mr. Gutierrez's mistreatment and harassment. *Id*., ¶ 21. Mr. Colvin invariably dreaded any interaction with Mr. Gutierrez. *Id*.   However, Mr. Colvin, in need of a job to put food on the table and grateful to work with M.J. Dean, hoped that Mr. Gutierrez would stop mistreating him and he continued to focus his efforts on doing his job the best way possible. *Id*., ¶ 22.

In or about the beginning of November 2019, Mr. Colvin was on the deck, cleaning and removing wire out of the beams when Mr. Gutierrez approached him. *Id*., ¶ 23.   Mr. Gutierrez asked Mr. Colvin what he was doing. *Id*. Mr. Colvin explained what tasks he had completed and what he was doing. *Id*.

Intimidated and exasperated by Mr. Gutierrez's mistreatment and constant scrutiny, Mr. Colvin asked Mr. Gutierrez why he is constantly "picking" on him and making his job so difficult. *Id*., ¶ 24. Mr. Gutierrez had no response for Mr. Colvin that day. *Id*., ¶ 25. However, the next day, Mr. Gutierrez came to Mr. Colvin and apologized for his prior behavior saying he will "start over". *Id*.

Despite his promise, on or about November 14, 2019, Mr. Gutierrez, as he has frequently done before, came to Mr. Colvin and instructed him to leave his usual area of work and join another crew. *Id*., ¶ 26. Mr. Colvin, frustrated at constantly being displaced for no legitimate reason, said that this is his usual area where he completes his tasks. *Id*.

In response, Mr. Gutierrez said, "I am your fu..ing boss and you do as I say!" *Id*., ¶ 27. Once again, Mr. Colvin inquired why Mr. Gutierrez is mistreating him. Mr. Gutierrez responded, "I am not fu..ing doing this, I am going to give you your two fucking checks." *Id*., ¶ 28.

Mr. Colvin, very concerned about losing his job for no reason, asked Mr. Gutierrez, why he continues to "mess" with him. *Id*., ¶ 29. In response, Mr. Gutierrez threw his hands up and said, "I am done with you NIG..R!!!" and walked away. *Id*.

Mr. Colvin was shocked and traumatized. *Id*., ¶ 30. He was humiliated and degraded. *Id*. He was in disbelief that in this day and age, in light of growing awareness of the horrific consequences of racial discrimination, he was still subjected to such demeaning conduct. *Id*.

On that same day (November 14, 2019), Mr. Colvin filled out and submitted an Employee Incident Investigation Report where he described the disturbing interaction with Mr. Gutierrez (the "Internal Complaint"). *Id*., ¶ 31.

Upon learning of the incident, John Thomason, a director at M.J. Dean, advised Mr. Colvin that Mr. Gutierrez would be fired. *Id*., ¶ 32. Outrageously, rather than terminating Mr. Gutierrez to rid M.J. Dean of a toxic and discriminatory environment, M.J. Dean decided to move Mr. Colvin to work for Dave Moody, also a yard supervisor. *Id*., ¶ 33.

To add insult to injury, contrary to Mr. Thomason/M.J. Dean's representations to Mr. Colvin, Mr. Gutierrez's employment was not terminated. *Id*., ¶ 34. Instead, on or about April 4, 2020, Mr. Colvin's employment was terminated. *Id*., ¶ 35.

Specifically, at some point just prior to Mr. Colvin's discharge, Mr. Moody went to work at a different job site at the Project. *Id*., ¶ 36.  Despite not being Mr. Colvin's supervisor and despite M.J. Dean's knowledge of Mr. Gutierrez's mistreatment, harassment, and discriminatory conduct of Mr. Colvin, M.J. Dean placed Mr. Gutierrez in charge of Mr. Colvin again. *Id*., ¶ 37.

At that time, Mr. Gutierrez jumped at the opportunity to retaliate against Mr. Colvin by terminating Mr. Colvin's employment under the ruse that there was "lack of work." *Id*., ¶ 38. However, M.J. Dean's and Mr. Gutierrez's "lack of work" justification for terminating Mr. Colvin's employment was brazenly inaccurate. *Id*., ¶ 39.

Indeed, the non-African American laborers who became employed by M.J. Dean after Mr. Colvin and had less seniority (Gilbert and Julian) were not terminated due to "lack of work." *Id*., ¶ 40.  In fact, a couple of non-African American laborers who were previously laid off by M.J. Dean from other areas of the project were called back to do Mr. Colvin's job (Andy and Lillow [sic]). *Id*.

Moreover, the subsequent job postings at the Union clearly indicated that M.J. Dean was looking for laborers. *Id*., ¶ 41.

Clearly, there was no lack of work at M.J. Dean and Mr. Colvin was fired in retaliation for his complaints of racial discrimination. *Id*., ¶ 42.

### III.

### LEGAL ARGUMENT

1. ***Standard of Review for Motion to Dismiss***

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests*." **Conley v. Gibson***, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate <u>only</u> when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. **See Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (emphasis added).

In considering whether a complaint is sufficient to state a claim, this Court must take all material allegations as true and construe them in the light most favorable to the plaintiff. **See NL**

*Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). To survive a motion to dismiss, Plaintiff need only plead facts for which a particular defendant may plausibly be liable for the alleged conduct. *See Bell*, 550 U.S. at 554. Indeed, the Supreme Court further clarified that, in order to avoid a motion to dismiss, the complaint need only contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

> A.  *Mr. Colvin's Claim for Negligent Hiring, Training and Supervision Should not be Dismissed*

To succeed on a claim for negligent hiring, training, supervision ("NHTS") under Nevada law, a plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, training, and/or supervising an employee even though defendant knew or should have known of the employee's dangerous propensities; (3) the breach caused the plaintiff's injuries; and (4) damages. *Hall v. SSF, Inc.*, 930 P.2d 94,99 (Nev. 1996).

In its Motion, Defendant curiously cites to only a portion of Plaintiff's subject cause of action. In its entirety, Plaintiff has alleged the following in support of his claims for NHTS:

**FOURTH CLAIM FOR RELIEF**
(Negligent Hiring, Training and Supervision against M.J. Dean )

> 73. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.
>
> 74. Defendant M.J. Dean owed a duty of care to Mr. Colvin, its employee, to properly train and supervise its employees to refrain from discrimination, harassment and retaliating against other employees.
>
> 75. In addition, M.J. Dean had a duty not to hire individuals with a propensity towards committing unlawful acts against Plaintiff including those of discrimination, harassment and retaliation.
>
> 76. In violations of that duty, M.J. Dean injured Plaintiff by failing to supervise, train, and hire appropriate personnel which resulted in damages including, among others, loss of Plaintiff's job and severe emotional distress including but not limited to, great mental and emotional harm, anguish, insecurity, damage to self-esteem and self-worth, shame and humiliation, lack of appetite, loss of sleep, depression, and/or anxiety.

77. Specifically, upon information and belief, M.J Dean failed to adequately train, hire and/or supervise its employees and/or agents, including but not limited to Mr. Gutierrez, regarding laws proscribing discrimination, harassment and retaliating in a workplace.

78. As a result, Mr. Gutierrez subjected Plaintiff to systemic and pervasive harassment and discrimination by, including but not limited to, using curse words against Plaintiff, threatening Plaintiff's job, picking on Plaintiff, demanding Plaintiff do unnecessary tasks, following Plaintiff around, scrutinizing Plaintiff's work, sending Plaintiff to work with other crews, making Plaintiff clean up by getting on his hands and knees, refusing Plaintiff overtime, assigning Plaintiff an unreasonable number of tasks, and using an offensive racial epithet commonly referred to as the "N-word."

79. As a further result, Mr. Gutierrez terminated Plaintiff from his employment with M.J. Dean under the guise of being "laid off" while Plaintiff was in fact terminated in retaliation for his complaints of discrimination and harassment.

80. As a further result, even though Plaintiff complained of the harassment and discrimination by Mr. Gutierrez, M.J. Dean's human resources employees and/or employees in similar position, failed to properly investigate and address the harassment and discrimination Plaintiff was subjected to.

81. The conduct of M.J. Dean as alleged herein, was willful, intentional, oppressive, fraudulent, malicious and done in a wanton and reckless disregard for the rights of Mr. Colvin, thereby warranting the imposition of punitive damages.

82. Mr. Colvin has been harmed by Defendant's acts or omissions, has suffered damages, and is entitled to be fully compensated therefore.

83. It has become necessary for Plaintiff to retain the services of an attorney to prosecute this action and Plaintiff is entitled to an award of reasonable attorney fees.

In his allegations, Plaintiff clearly states that M.J. Dean failed to properly train its employees and had therefore, known or should have known, that Mr. Gutierrez and others as alleged, were not properly trained as M.J. Dean's employees.  Also in paragraph 80, Plaintiff clearly re-iterates that Mr. Colvin complained to M.J. Dean about Mr. Gutierrez, thereby alleging M.J. Dean's knowledge of Mr. Gutierrez's dangerous propensities.

Moreover, as alleged in paragraph 73, Plaintiff incorporates all of the previous allegations of the First Amended Complaint which more than sufficiently explain, in detail, M.J. Dean's

wrongdoings. Specifically, the previous paragraphs of the First Amended Complaint clearly explain that after Mr. Gutierrez, as the last straw in a series of harassing and discriminatory actions, called Mr. Colvin a derogatory racial epithet, Mr. Colvin complained to M.J. Dean by filing out and submitting an incident report. *See* ECF No. 21, ¶ 31. As a result, M.J. Dean removed Mr. Colvin from Mr. Gutierrez's supervision. *Id*., ¶ 33. As such, based on its receipt of Mr. Colvin's incident report and moving him to another supervisor's area in response, M.J. Dean cannot feign ignorance and claim that it did not know that Mr. Gutierrez had dangerous propensities.

Unmistakably, M.J. Dean knew about Mr. Gutierrez' dangerous propensities, and yet it negligently continued to retain him as an employee and it had failed to adequately supervise him. Indeed, M.J. Dean can not, in good faith claim that it does "not have a fair notice" of the grounds of Mr. Colvin's claim of NHTS as it attempts to do in its Motion. *See Conley*, 355 U.S. at 47.

Based on the foregoing, Plaintiff has alleged his cause of action for Negligent Hiring, Training and Supervision with requisite sufficiency and Defendant's motion to dismiss should be denied.

## IV.

## CONCLUSION

Based on the foregoing, Mr. Colvin respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

DATED this 4th day of June, 2021.

JESSE SBAIH & ASSOCIATES, LTD.

By   /s/ Ines Olevic-Saleh  
　　　Jesse M. Sbaih (#7898)  
　　　Ines Olevic-Saleh (#11431)  
　　　The District at Green Valley  
　　　170 South Green Valley Parkway, Suite 280  
　　　Henderson, Nevada 89012  
　　　　　*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

Pursuant to FRCP Rule 5(b), I certify that I am an employee of the law firm of Jesse Sbaih & Associates, Ltd., and that on this 4th day of June, 2021, I caused **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to be served via electronic service to the following:

Martin A. Little, Esq.
Robert L. Rosenthal, Esq.
Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy, Suite 1000
Las Vegas, NV 89169
    *Attorneys for Defendant*

　　　　　　　　　　　　　　　　　　　　/s/ Ines Olevic-Saleh
　　　　　　　　　　　　　　　　An employee of Jesse Sbaih & Associates, Ltd.