Martin A. Little, Esq.
Nevada Bar No. 7067
Robert L. Rosenthal, Esq.
Nevada Bar No. 6476
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: rlr@h2law.com
Email: mal@h2law.com

*Attorneys for Defendant M.J. Dean Construction, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN, | Case No. 2:20-cv-01765-APG-EJY |
| Plaintiff, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | **(Oral Argument Requested)** |
| M.J. DEAN CONSTRUCTION, INC, | |
| Defendant. | |

## I.
## INTRODUCTION

This is an employment discrimination matter wherein Plaintiff, Parnell Colvin ("Colvin"), who is African American, is alleging the following causes of action against his former employer, Defendant M.J. Dean Construction, Inc. ("MJ Dean"): (1) retaliation in violation of 42 U.S.C. § 2000e and NRS 613.340; (2) discrimination in violation of 42 U.S.C. § 2000e-2 and NRS 613.330; (3) harassment in violation of 42 U.S.C. § 2000e-2 and NRS 613.330; and (4) negligent training and supervision.

This is essentially a case of "the best defense is a good offense". On November 14, 2019, approximately five months after MJ Dean hired Plaintiff to work as a Union Laborer on the Madison Square Garden Sphere Project in Las Vegas (the "Sphere Project"), Plaintiff got into a verbal argument with his General Foreman, Kevin Gutierrez ("Gutierrez"). At the end of the altercation, Gutierrez told Plaintiff that he was "done with him" and that he was going to give

1

Colvin his final paycheck. In an effort to prevent MJ Dean from terminating Plaintiff's employment, Colvin took the "offensive" by immediately filing an internal written complaint, alleging that Gutierrez had called him the N-word during their argument.

Plaintiff's tactic worked. Colvin was not fired. Instead, MJ Dean proceeded to conduct an internal investigation concerning his claims. Gutierrez adamantly denied ever discriminating against Plaintiff, and the investigation also revealed that no one had ever heard Gutierrez say or do anything discriminatory *at any time*. Even though Plaintiff's assertions were not supported, within hours of Colvin submitting his internal complaint, Plaintiff agreed to be reassigned to the yard to perform cleanup work under the supervision of David Muti ("Muti") so that he would not have to interact with Gutierrez ever again.

Plaintiff testified that he was "pleased" with how MJ Dean had resolved his internal complaint, and he proceeded to work without incident for the next five months until the General Contractor, AECOM Hunt, ordered MJ Dean to shut down the jobsite due to COVID-19. As a result, Colvin, along with about *500 other employees* were laid off. Plaintiff admitted that, after he submitted his internal complaint against Gutierrez, no one at MJ Dean said or did anything that he found to be discriminatory or offensive.

Out of the 500 or so employees who were laid off, only about 200 were subsequently re-hired. Plaintiff, however, was not among those who returned, because MJ Dean did not re-hire anybody to perform cleanup work in the yard where Colvin had been stationed.

Based on the foregoing, each of Plaintiff's claims must be dismissed for the following reasons:

A.  **Retaliation.** To establish a claim for retaliation, Plaintiff must show that, (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D. Nev. 2012), *aff'd sub nom. Van Pelt v. Nevada, ex rel. Nevada Dep't of Corr.*,

2

637 Fed. Appx. 307 (9th Cir. 2016). In this case, Plaintiff cannot demonstrate that his layoff occurred because he complained about Gutierrez approximately five months earlier. Plaintiff, along with roughly 500 other employees were all laid off in April 2020, solely due to COVID-19. Accordingly, Plaintiff's cause of action for retaliation fails as a matter of law.

**B.** **Racial Discrimination (Disparate Treatment).** Plaintiff's second cause of action for racial discrimination is premised on his allegation that he was treated differently than other employees due to his race (African American). In order to establish a disparate treatment claim for racial discrimination under Title VII, "the plaintiff must first show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Yamaguchi v. Atlantis Casino Resort*, 2019 WL 4738009 at *4 (D. Nev. 2019) (slip copy).

Plaintiff cannot satisfy the fourth element of the claim, because Colvin and approximately *500 other employees* were all laid off due to COVID-19. Therefore, Plaintiff's third cause of action for racial discrimination must be dismissed.

**C.** **Racial Harassment:** "Racial harassment occurs when a plaintiff is subject to unwelcome verbal or physical conduct based on race that is 'sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive work environment.'" *Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F.Supp.3d 1267 (D. Nev. 2015) *citing Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

In this case, Plaintiff alleges that Gutierrez called him the N-word one time. Colvin immediately complained to MJ Dean and Plaintiff was pleased with the outcome. Plaintiff testified that, after he complained, his job title, wages and benefits remained the same, he never had to interact with Gutierrez again, and he was able to perform his job duties without any problems. Therefore, Gutierrez' alleged conduct was neither sufficiently severe nor pervasive as

3

to alter the conditions of Colvin's employment and create an abusive work environment. As such, Plaintiff claim for racial harassment fails as a matter of law.

**D.  Negligent Training and Supervision.** "The tort of negligent training and supervision imposes direct liability on the employer if (1) the employer knew that the employee acted in a negligent manner, (2) the employer failed to train, and (3) the employer's negligence proximately caused the plaintiff's injuries." *Helle v. Core Home Health Servs. of Nev.*, 124 Nev. 1474, 238 P.3d 818 (Nev. 2008).

Here, Plaintiff's fourth cause of action for negligent training and supervision fails as a matter of law because Plaintiff testified that he did not have any facts or documents showing that Gutierrez did not receive proper training, and he admitted that Gutierrez was in fact supervised by Brian Long, the General Superintendent, and by John Thomason, the Director of Field Operations.

## II.
## FACTS

MJ Dean provides construction services for large commercial projects, including the current Madison Square Garden Sphere Project in Las Vegas, Nevada ("Sphere Project"). (Ex. A, Glidewell Decl.)

Plaintiff, who is a member of the Laborer's Union, Local 872 (the "Union"), alleges that, in May 2019, MJ Dean's Director of Field Operations, John Thomason ("Thomason"), who was in charge of the Sphere Project, told Colvin that MJ Dean would hire him as a Laborer to work on the Sphere Project. (Ex. B, Rosenthal Decl., Ex. C, Colvin Deposition Transcript ("DT") at p. 52:21 – 53:2; Ex. D, Thomason DT at pp. 5:7-13, 8:5-10 and 18:4-6.) Thereafter, on June 23, 2019, Plaintiff was dispatched from the Union hall and began working for MJ Dean. (Ex. C at p. 64, 1-8.)

4

Plaintiff testified in his deposition that, at the time Plaintiff began working for MJ Dean, he received, read, and understood the Company's policies and procedures concerning discrimination, harassment, retaliation, and complaint procedures, which were including included in the following onboarding documents:

1. Plaintiff's acknowledgment of receipt of MJ Dean's Anti-Harassment / Discrimination Policy (Ex. E and Ex. C at pp. 69:16 – 70:2);

2. MJ Dean's employee handbook, which was entitled "Code of Safe Practices & Anti-Drug and Harassment Policies" (Ex. F and Ex. C at p. 71:11-14); and

3. MJ Dean's Office Policy Manual (Ex. G and Ex. C at p. 70:10-14).

More specifically, Plaintiff admitted that he knew discrimination, harassment and retaliation were strictly prohibited, and that he was required to immediately report any and all concerns to his supervisor and/or the human resources department. (Ex. C. at pp. 71:11 – 74:17.) Plaintiff also acknowledged that, throughout his employment, he was aware that MJ Dean had the right to change his assigned work areas. (Ex. C. at p. 86:21 – 87:5.)

A. **PLAINTIFF'S INTERNAL COMPLAINT OF RACIAL DISCRIMINATION AGAINST KEVIN GUTIERREZ AND MJ DEAN'S SUBSEQUENT INTERNAL INVESTIGATION**

From the time that Plaintiff began working at MJ Dean on July 23, 2019, until November 14, 2019, he was supervised by Gutierrez, who was a General Forman. (Ex. C at p. 89:2-4.) Significantly, Plaintiff admitted that, during his first five months of employment, the only problem he had at MJ Dean was that he was not assigned to work any overtime until about his fourth week on the job. (Ex. C at p. 116:7 – 117:3.) However, Plaintiff conceded that Superintendent David McGrandy was in charge of assigning overtime, not Gutierrez, and that he never complained in writing to anyone at MJ Dean or his Union at any point during his employment about a perceived lack of overtime. (Ex. C at pp. 112:12-21 and 114:4-18.)

The first (and only) time that Plaintiff formally complained to anyone at MJ Dean about any sort of workplace discrimination and/or harassment occurred on November 14, 2019, when Plaintiff submitted a "Workplace Incident Investigation Report" ("Internal Complaint"). (Exhibit H, and Ex. C. 117:13-18.) Plaintiff's Internal Complaint alleged that, earlier that day, Gutierrez instructed Plaintiff to leave his usual work area and join another crew. (Ex. H.) Instead of complying with Gutierrez' request, Plaintiff claimed that he questioned Gutierrez' order, which prompted Gutierrez to tell Plaintiff that he was the boss and to follow his instructions. *Id.* Plaintiff's Internal Complaint maintained that he continued to question Gutierrez' order, whereupon Gutierrez said that he would give Plaintiff his final paycheck, called him the N-word, and left the area. *Id.*

Significantly, Plaintiff admitted in his deposition that, other than claiming that Gutierrez called him the N-word one time on November 14, 2019, Gutierrez never said or did *anything* else that Plaintiff considered discriminatory or offensive. (Ex. C at pp. 138:25 – 139:3.) Plaintiff also conceded that, apart from his one Internal Complaint, he never complained in writing to anybody at any time about any issues or concerns and never complained to the Union. (Ex. C at 154:12-17.)

Right after the incident with Gutierrez, Plaintiff went to MJ Dean's jobsite trailer, reported to Thomason what had happened, and then typed out the Internal Complaint. (Ex. C at p. 129:25.) Immediately following Plaintiff's submission of the Internal Complaint, Paul Rosequist ("Rosequist:"), MJ Dean's Project Safety Manager, immediately began conducting an internal investigation, which consisted of him interviewing Gutierrez and various other employees who were present at time of the incident. Gutierrez denied ever calling Plaintiff the N-word or picking on him. (Ex. I, Rosequist DT at pp. 13:5 – 14:22.) Further, all of the witnesses said that they had *never* heard Gutierrez call Plaintiff the N-word" or use racial epithets *at any time*, and

that Colvin had never complained to them about Gutierrez. (Ex. J; Ex. K, Logan Decl.; Ex. L, Jeffers Decl.; and Ex. M, Rodriguez Decl.)

Plaintiff testified that, on the day of the incident, "George" from AECOM Hunt, which was the general contractor on the Sphere Project, instructed Thomason to have Plaintiff work in a different area so that he would no longer have to work with Gutierrez. (Ex. C at p. 132:6-14.) Accordingly, Thomason immediately assigned Plaintiff to perform cleanup work in the yard where he worked under the supervision of David Muti. *Id.*

Plaintiff stated that he was "pleased" with how MJ Dean handled his Internal Complaint and he never had any problems working with Muti or any other MJ Dean employees—including Gutierrez—for the remainder of his employment (which was approximately five months). (Ex. C at pp. 132:25 – 135:4.) Plaintiff said that after he began working with Muti, he was able to perform his job duties without any issues. (Ex. C at p. 164:19 – 165:3.) Additionally, Plaintiff testified that he never even asked anyone at MJ Dean whether an internal investigation had been conducted because, no matter what the outcome was going to be, he always intended on filing a charge of discrimination with the EEOC. (Ex. C at pp. 163:17 – 164:7.)

Shortly after Plaintiff began working in the yard with Muti, Plaintiff claimed that he saw racist graffiti in one of the restrooms at the jobsite on December 24, 2019 and on January 3, 2020. (Ex. C at pp. 167:22 – 176:17.) Plaintiff said that he did not know who had written the graffiti, but that he spoke to MJ Dean's safety personnel, "Julian" and "Tony" about it, and it was then removed. *Id.*

Plaintiff claimed that, throughout his employment, he heard MJ Dean employees make "white supremacist" comments; however, Plaintiff admitted that he could not remember even a single name of somebody who made such comments. (Ex. C at p. 239:7-24.) Plaintiff also conceded that he never complained to anybody at MJ Dean, the Union or AECOM Hunt about white supremacist comments that he considered offensive. (Ex. C at p. 239:25 – 240:24.)

7

**B. APPROXIMATELY FIVE MONTHS AFTER PLAINTIFF FILED HIS INTERNAL COMPLAINT, HE WAS LAID OFF DUE TO COVID-19, ALONG WITH ABOUT 500 OTHER EMPLOYEES**

On April 1, 2020, AECOM Hunt advised MJ Dean that, due to COVID-19, the jobsite needed to be shut down by April 15, 2020. (Ex. D at pp. 36:17 – 37:7, and Ex. O.) According to Thomason, MJ Deans' Director of Field Operations, on "April 2, 2020, we started the layoffs. We could not send 500 layoffs to our [accounting] office in one day, so we phased it out over the next ten days." (Ex. D at p. 37:4-6.) Thomason made the decision to lay off Colvin as well as the other 500 or so MJ Dean employees. (Ex. C at p. 36:17-19.) Gutierrez was not involved in deciding who to lay off. (Ex. N, DT of Gutierrez at p. 19:20-22.)

On April 6, 2020, Colvin was laid off due to COVID-19. (Ex. C at p. 182:13 – 183:3, and Ex. M.) The Sphere Project, however, was only shut down for a brief period; but when it re-opened, only about 200 of the 500 employees who were laid off were ultimately re-hired. (Ex. D at p. 35:15-17.) Plaintiff was not among those who were re-hired. The decision regarding who to re-hire was left up to the following superintendents: David McGrandy, Fernando Gerrirez, Scott Hollander, and Tony. (Ex. D at p. 39:5-21.) Neither Thomason nor Gutierrez took part in the decision-making process. (Ex. D at p. 41:9 – 42:3.)

Although Plaintiff contends that he should have been re-hired, he admitted that he did not know whether MJ Dean was obligated to do so. (Ex. C at p. 210:6-9.)

**C.  MATERIAL FACTS RELATED TO PLAINTIFF'S CLAIM FOR RETALIATION**

Plaintiff testified that nobody at MJ Dean ever threatened to discipline him or terminate his employment after he submitted his Internal Complaint. (Ex. C 159:9-14.) Plaintiff also admitted that, from the time that he began working with Muti in the yard on November 14, 2019, until he was laid off on April 4, 2020,

- His job title remained the same;
- He had no complaints or problems with his assigned job duties;

8

- He did not believe that he had been demoted;
- His wages and benefits remained the same; and
- He had no interaction with Gutierrez.

(Ex. C at pp. 164:22 – 166:9.)

Finally, Plaintiff was laid off—along with roughly 500 other employees—at the direction of AECOM Hunt due to COVID-19. (Ex. D at pp. 36:17 – 37:7, and Ex. O.)

### D. MATERIAL FACTS RELATED TO PLAINTIFF'S CLAIM FOR NEGLIGENT TRAINING AND SUPERVISION

Plaintiff's FAC maintains that MJ Dean failed to properly train and supervise Gutierrez. However, Colvin admitted in his deposition that he did not have any facts or documents to support his allegation. (Ex. C at pp. 212:23 – 213:1.)

With respect to Plaintiff's allegation that MJ Dean failed to supervise Gutierrez, Plaintiff conceded that Gutierrez was in fact supervised by Brian Long, who was a General Superintendent, and by Thomason, who was the Director of Field Operations. (Ex. C at p. 213:2-18.)

## III.
## ARGUMENT

### A. LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

"If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.     PLAINTIFF'S FIRST CAUSE OF ACTION FOR RETALIATION FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN HIS INTERNAL COMPLAINT AND HIS LAYOFF FIVE MONTHS LATER DUE TO COVID-19**

To establish a claim for retaliation, Plaintiff must show that, (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D. Nev. 2012), *aff'd sub nom. Van Pelt v. Nevada, ex rel. Nevada Dep't of Corr.*, 637 Fed. Appx. 307 (9th Cir. 2016).

In this case, Plaintiff cannot establish that his layoff on April 5, 2020 had anything to do with filing an Internal Complaint against Gutierrez almost *five months earlier* on November 14, 2019. The reality is that Colvin was laid off at the same time as approximately 500 other employees *solely* due to COVID-19. Further, the one person who Plaintiff claims discriminated and harassed him—Gutierrez—had no part in the decision to lay off Colvin. Additionally, Plaintiff testified that, after he complained about Gutierrez, he did not experience any problems for the remainder of his employment.

Accordingly, Plaintiff's claim for retaliation must be dismissed as a matter of law.

**C.     PLAINTIFF'S SECOND CAUSE OF ACTION FOR RACIAL DISCRIMINATION BASED ON DISPARATE TREATMENT MUST BE DISMISSED BECAUSE PLAINTIFF WAS LAID OFF ALONG WITH APPROXIMATELY 500 OTHER EMPLOYEES DUE TO COVID-19**

According to Plaintiff's First Amended Complaint ("FAC"), Colvin's cause of action for racial discrimination is premised on the notion that he was treated differently than other employees because he is African American. Title VII makes it "an unlawful employment practice

10

for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race." 42 U.S.C. § 2000e2(a); *see Brooks v. City of San Mateo*, 229 F.3d 917, 928–29 (9th Cir. 2000).

In order to establish a disparate treatment claim for racial discrimination under Title VII, "the plaintiff must first show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Yamaguchi v. Atlantis Casino Resort*, 2019 WL 4738009 at *4 (D. Nev. 2019) (slip copy).

Claims for unlawful discrimination under NRS 613.330 are analyzed under the same principles applied to similar Title VII claims. *See Roberts v. Clark County School District*, F.Supp.3d 1001, 1115 (D. Nev. 2016); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev.2005); and *Apeceche v. White Pine Co.*, 96 Nev. 723, 615 P.2d 975, 977–78 (Nev. 1980).

In the present case, Plaintiff cannot satisfy the fourth element of the claim, because although he suffered an adverse employment action in the form of a layoff, Colvin and about 500 other employees were all laid off within a two-week period in April 2020 due to COVID-19. Furthermore, the layoff was at the instruction of the General Contractor, AECOM Hunt, and Gutierrez, who was the sole MJ Dean employee that Colvin had any problems with, had nothing to do with his layoff.

Accordingly, Plaintiff's second cause of action for discrimination under Title VII and NRS 613.330 must be dismissed as a matter of law.

/ / /

/ / /

/ / /

/ / /

D. **PLAINTIFF'S THIRD CAUSE OF ACTION FOR RACIAL HARASSMENT FAILS AS A MATTER OF LAW BECAUSE THE ALLEGED WRONGFUL CONDUCT WAS NEITHER SEVERE NOR PERVASIVE TO ALTER THE CONDITIONS OR EMPLOYMENT AND CREATE AN ABUSIVE WORK ENVIRONMENT**

"Racial harassment occurs when a plaintiff is subject to unwelcome verbal or physical conduct based on race that is 'sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive work environment.'" *Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F.Supp.3d 1267 (D. Nev. 2015) *citing Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). Plaintiff's state law cause of action for racial harassment under NRS 613.330 must be analyzed under the same framework as his federal claims. *See Roberts v. Clark County School District*, F.Supp.3d 1001, 1115 (D. Nev. 2016).

The case of *Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 Fed. Appx. 181 (9th Cir. 2010), is analogous to the instant action. In *Harris*, plaintiff sued his employer for racially hostile work environment under Title VII and Oregon state law, claiming that a co-worker called him the N-word twice. *Id.* at *1. The Court granted summary judgment, holding that use of the N-word twice was not pervasive or severe enough to support plaintiff's claim. *Id.* Significantly, the Court noted that, after complaining, plaintiff was not subjected to any further harassment. *Id.*

The holding and reasoning in *Harris* should be applied here. Notwithstanding the fact that Gutierrez denied ever calling Plaintiff the N-word and that there were no witnesses to the incident on November 14, 2019, Plaintiff alleges that he was called the N-word only once. Furthermore, just like the plaintiff in *Harris*, Colvin admitted that after he complained about Gutierrez, he was not subjected to any further harassment for the remainder of his employment, and that he was able to perform all of his job duties without issue. Accordingly, the alleged harassing conduct was not pervasive or severe enough to support Plaintiff's claim. As such,

12

Plaintiff's third cause of action for racial harassment under Title VII and NRS 613.330 must be dismissed as a matter of law.

### E. PLAINTIFF'S FOURTH CAUSE OF ACTION FOR NEGLIGENT TRAINING AND SUPERVISION FAILS AS A MATTER OF LAW

"The tort of negligent training and supervision imposes direct liability on the employer if (1) the employer knew that the employee acted in a negligent manner, (2) the employer failed to train, and (3) the employer's negligence proximately caused the plaintiff's injuries." *Helle v. Core Home Health Servs. of Nev.*, 124 Nev. 1474, 238 P.3d 818 (Nev. 2008).

As stated above, Colvin testified that he did not have any facts or documents showing that MJ Dean failed to properly train Gutierrez. Plaintiff also admitted that Gutierrez was in fact supervised—by Brian Long, who was a General Superintendent, and Thomason, who was the Director of Field Operations.

Therefore, Plaintiff's fourth cause of action for negligent training and supervision must be dismissed as a matter of law.

## IV.
## CONCLUSION

Based on the foregoing, the Court should grant Defendant's Motion for Summary Judgment.

Dated: October 8, 2021

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Robert Rosenthal
Robert Rosenthal, Esq.
Martin A. Little, Esq.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
*Attorneys for Defendant M.J. Dean Construction, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically filed and served upon the following parties on October 8, 2021 through the Court's ECF system.

Law Office of Daniel Marks
Daniel Marks, Esq.
Nicole M. Young, Esq.
610 South Ninth Street
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*

/s/ Barbara Dunn

Howard & Howard Attorneys PLLC