Martin A. Little, Esq.
Nevada Bar No. 7067
Robert L. Rosenthal, Esq.
Nevada Bar No. 6476
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: rlr@h2law.com
Email: mal@h2law.com

*Attorneys for Defendant M.J. Dean Construction, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN,<br><br>Plaintiff,<br><br>vs.<br><br>M.J. DEAN CONSTRUCTION, INC,<br><br>Defendant. | Case No. 2:20-cv-01765-APG-EJY<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**<br><br>**(Oral Argument Requested)** |

## I.
## INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment seeks to establish liability against Defendant M.J. Dean Construction, Inc. ("MJ Dean") with respect to his claims for negligent training and supervision, and retaliation. Due to the fact that Plaintiff cannot satisfy the basic elements for each of cause of action, Plaintiff's Motion relies on hyperbole, conclusory arguments and speculation.

With respect to Plaintiff's claim for negligent training and supervision, Plaintiff must prove as a matter of law that (1) MJ Dean knew that its managers acted in a negligent manner, (2) MJ Dean failed to train its managers, and (3) MJ Dean negligence proximately caused the plaintiff's injuries. *See Helle v. Core Home Health Servs. of Nev.*, 124 Nev. 1474, 238 P.3d 818 (Nev. 2008). However, Plaintiff's Motion makes the simplistic conclusory argument that, because

HOWARD & HOWARD ATTORNEYS PLLC

Colvin claims that Gutierrez called him the N-word once, and that Plaintiff saw racist graffiti in the bathrooms twice and heard other unnamed employees make discriminatory remarks, Defendant must have negligently trained and supervised its managers. However, Plaintiff fails to provide any evidence that MJ Dean knew that Gutierrez or others acted in a negligent manner or that MJ Dean failed to properly train and supervise its managers. Tellingly, Plaintiff's counsel never asked any of Defendant's witnesses in their depositions about any aspect of their training or supervision relating to discrimination and/or harassment.

Moreover, Plaintiff's allegations concerning negligent training and supervision are directly contradicted by the following undisputed facts taken by Defendant: on the same day that Colvin complained about Gutierrez, MJ Dean conducted an internal investigation, which immediately resulted in Plaintiff no longer having to work with Gutierrez for the remainder of his employment, and Colvin's admission in his deposition that he was "pleased with the outcome."

Plaintiff's claim for retaliation is similarly flawed. To establish a claim for retaliation, Plaintiff must show that, (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D. Nev. 2012), *aff'd sub nom. Van Pelt v. Nevada, ex rel. Nevada Dep't of Corr.*, 637 Fed. Appx. 307 (9th Cir. 2016).

In the present case, the undisputed facts demonstrate that Plaintiff was laid off – along with roughly 500 other employees – due to COVID-19 approximately five months after Colvin complained about Gutierrez. As such, Plaintiff cannot establish a nexus between his complaint and layoff. For Plaintiff to claim otherwise is pure speculation.

Accordingly, Plaintiff's Motion should be denied.

/ / /

/ / /

/ / /

2

II.

FACTS

**A.    ON JUNE 23, 2019, PLAINTIFF WAS HIRED BY MJ DEAN TO WORK AS A LABORER ON THE SPHERE PROJECT**

MJ Dean provides construction services for large commercial projects, including the current Madison Square Garden Sphere Project in Las Vegas, Nevada ("Sphere Project"). (Ex. A, Glidewell Decl.)

Plaintiff, who is a member of the Laborer's Union, Local 872 (the "Union"), alleges that, in May 2019, MJ Dean's Director of Field Operations, John Thomason ("Thomason"), who was in charge of the Sphere Project, told Colvin that MJ Dean would hire him as a Laborer to work on the Sphere Project. (Ex. B, Rosenthal Decl., Ex. C, Colvin Deposition Transcript ("DT") at p. 52:21 – 53:2; Ex. D, Thomason DT at pp. 5:7-13, 8:5-10 and 18:4-6.) Thereafter, on June 23, 2019, Plaintiff was dispatched from the Union hall and began working for MJ Dean. (Ex. C at p. 64, 1-8.)

Plaintiff testified in his deposition that, at the time Plaintiff began working for MJ Dean, he received, read, and understood the Company's policies and procedures concerning discrimination, harassment, retaliation, and complaint procedures, which were including included in the following onboarding documents:

1.    Plaintiff's acknowledgment of receipt of MJ Dean's Anti-Harassment / Discrimination Policy (Ex. E and Ex. C at pp. 69:16 – 70:2);

2.    MJ Dean's employee handbook, which was entitled "Code of Safe Practices & Anti-Drug and Harassment Policies" (Ex. F and Ex. C at p. 71:11-14); and

3.    MJ Dean's Office Policy Manual (Ex. G and Ex. C at p. 70:10-14).

More specifically, Plaintiff admitted that he knew discrimination, harassment and retaliation were strictly prohibited, and that he was required to immediately report any and all concerns to his supervisor and/or the human resources department. (Ex. C. at pp. 71:11 – 74:17.)

3

HOWARD & HOWARD ATTORNEYS PLLC

1   Plaintiff also acknowledged that, throughout his employment, he was aware that MJ Dean had the

2   right to change his assigned work areas. (Ex. C. at p. 86:21 – 87:5.)

3   **B.    ON NOVEMBER 14, 2019, PLAINTIFF SUBMITTED AN INTERNAL WRITTEN**
       **COMPLAINT AGAINST GUTIERREZ**

4

5   Plaintiff testified that, from the time he began working at MJ Dean on July 23, 2019, until

6   November 14, 2019, the *only problem* he had at MJ Dean was that he was not assigned to work

7   any overtime until about his fourth week on the job. (Ex. C at p. 116:7 – 117:3.) However, Plaintiff

8   conceded that Superintendent David McGrandy was in charge of assigning overtime, not

9   Gutierrez, and that he never complained in writing to anyone at MJ Dean or his Union at any point

10  during his employment about a perceived lack of overtime. (Ex. C at pp. 112:12-21 and 114:4-

11  18.)

12

13  The first (and only) time that Plaintiff formally complained to anyone at MJ Dean about

14  any sort of workplace discrimination and/or harassment occurred on November 14, 2019, when

15  Plaintiff submitted a "Workplace Incident Investigation Report" ("Internal Complaint"). (Exhibit

16  H, and Ex. C. 117:13-18.) Plaintiff's Internal Complaint alleged that, earlier that day, Gutierrez

17  instructed Plaintiff to leave his usual work area and join another crew. (Ex. H.) Instead of

18  complying with Gutierrez' request, Plaintiff claimed that he questioned Gutierrez' order, which

19  prompted Gutierrez to tell Plaintiff that he was the boss and to follow his instructions. *Id.*

20  Plaintiff's Internal Complaint maintained that he continued to question Gutierrez' order,

21  whereupon Gutierrez said that he would give Plaintiff his final paycheck, called him the N-word,

22

23  and left the area. *Id.*

24  ***Significantly, Plaintiff admitted in his deposition that, other than claiming that***

25  ***Gutierrez called him the N-word one time on November 14, 2019, Gutierrez never said or did***

26  ***anything else that Plaintiff considered discriminatory or offensive***. (Ex. C at pp. 138:25 – 139:3.)

27

28  Plaintiff also conceded that, apart from his one Internal Complaint, he never complained in writing

to anybody at any time about any issues or concerns and never complained to the Union. (Ex. C at 154:12-17.)

Right after the incident with Gutierrez, Plaintiff went to MJ Dean's jobsite trailer, reported to Thomason what had happened, and then typed out the Internal Complaint. (Ex. C at p. 129:25.)

### C.    MJ DEAN IMMEDIATELY CONDUCTED A WORKPLACE INVESTIGATION INTO THE ALLEGATIONS CONTAINED IN PLAINTIFF'S INTERNAL COMPLAINT

Immediately following Plaintiff's submission of the Internal Complaint, Paul Rosequist ("Rosequist"), MJ Dean's Project Safety Manager, began conducting an internal investigation, which consisted of him interviewing Gutierrez and various other employees who were present at time of the incident. Gutierrez denied ever calling Plaintiff the N-word or picking on him, and in the various witness statements Rosequist gathered as part of the investigation, nobody could corroborate Plaintiff's claim. (Ex. I, Rosequist DT at pp.  13:5 – 14:22, Ex. A, and Ex. J., witness statements.)

Plaintiff testified that, later on the day of the incident, "George" from AECOM Hunt, (the general contractor on the Sphere Project), instructed Thomason to have Plaintiff work in a different area so that he would no longer have to work with Gutierrez. (Ex. C at p. 132:6-14.) Accordingly, Thomason *immediately* assigned Plaintiff to perform cleanup work in the yard where he proceeded to work under the supervision of David Muti for the remainder of his employment. *Id.*

***Plaintiff testified that he was "pleased" with how MJ Dean handled his Internal Complaint and said that he never had any problems working with Muti or any other MJ Dean employees—including Gutierrez—for the remainder of his employment.*** (Ex. C at pp. 132:25 – 135:4.) Plaintiff stated that after he began working with Muti, he was able to perform his job duties without any issues. (Ex. C at p. 164:19 – 165:3.) Additionally, Plaintiff testified that he

1  never even asked anyone at MJ Dean whether an internal investigation had been conducted
2  because, no matter what the outcome was going to be, he always intended on filing a charge of
3  discrimination with the EEOC. (Ex. C at pp. 163:17 – 164:7.)

4  **D.    ON APRIL 6, 2020, APPROXIMATELY FIVE MONTHS AFTER PLAINTIFF**
   **FILED HIS INTERNAL COMPLAINT, COLVIN WAS LAID OFF DUE TO**
5  **COVID-19, ALONG WITH ABOUT 500 OTHER EMPLOYEES**

6          On April 1, 2020, AECOM Hunt advised MJ Dean that, due to COVID-19, the jobsite
7  needed to be shut down by April 15, 2020. (Ex. D at pp. 36:17 – 37:7, and Ex. L.) According to
8
9  Thomason, MJ Deans' Director of Field Operations, on "April 2, 2020, we started the layoffs. We
10 could not send 500 layoffs to our [accounting] office in one day, so we phased it out over the next
11 ten days." (Ex. D at p. 37:4-6.) Thomason made the decision to lay off Colvin as well as the other
12 500 or so MJ Dean employees. (Ex. C at p. 36:17-19.) *Gutierrez was not involved in deciding*
13 *who to lay off.* (Ex. K, Gutierrez DT at p. 19:20-22.)

14         On April 6, 2020, Colvin was laid off due to COVID-19. (Ex. C at p. 182:13 – 183:3, and
15
16 Ex. M.) The Sphere Project, however, was only shut down for a brief period; but when it re-
17 opened, only about 200 of the 500 employees who were laid off were ultimately re-hired. (Ex. D
18 at p. 35:15-17.) Plaintiff was not among those who were re-hired. The decision regarding who to
19 re-hire was left up to the following superintendents: David McGrandy, Fernando Gerrirez, Scott
20 Hollander, and Tony. (Ex. D at p. 39:5-21.) *Neither Thomason nor Gutierrez took part in the*
21 *decision-making process.* (Ex. D at p. 41:9 – 42:3.)
22
23         Although Plaintiff contends that he should have been re-hired, he admitted that he did not
24 know whether MJ Dean was obligated to do so. (Ex. C at p. 210:6-9.)

25 **E.    MATERIAL FACTS RELATED TO RACIST GRAFFITI AND ALLEGED**
   **RACIST REMARKS BY OTHER EMPLOYEES**
26
27         Plaintiff's Motion contends that racism was pervasive in the workplace. As evidence,
28 Plaintiff claims that, shortly after he began working in the yard with Muti, he saw racist graffiti

in one of the restrooms at the jobsite on December 24, 2019 and on January 3, 2020. (Ex. C at pp. 167:22 – 176:17.) *Plaintiff said that he did not know who had written the graffiti, but that he spoke to MJ Dean's safety personnel, "Julian" and "Tony" about it, and it was then removed. Id.*

Gutierrez also testified that he occasionally saw racist graffiti and that each time he reported it to safety to have it removed. (Ex. K, Gutierrez DT at pp. 32:2 – 33:3.) Plaintiff's Motion fails to provide any evidence regarding who was responsible for the graffiti. *More importantly, Plaintiff's Motion fails to provide any evidence that MJ Dean failed to remove the graffiti.*

Plaintiff claimed that, throughout his employment, he heard MJ Dean employees make "white supremacist" comments; however, Plaintiff admitted that he could not remember even a single name of somebody who made such comments. (Ex. C at p. 239:7-24.) Plaintiff also conceded that he never complained to anybody at MJ Dean, the Union or AECOM Hunt about white supremacist comments that he considered offensive. (Ex. C at p. 239:25 – 240:24.)

F.      **MATERIAL FACTS RELATED TO PLAINTIFF'S CLAIM FOR RETALIATION**

Plaintiff testified that nobody at MJ Dean ever threatened to discipline him or terminate his employment after he submitted his Internal Complaint. (Ex. C at p. 159:9-14.) Plaintiff also admitted that, from the time that he began working with Muti in the yard on November 14, 2019, until he was laid off on April 4, 2020,

- His job title remained the same;
- He had no complaints or problems with his assigned job duties;
- He did not believe that he had been demoted;
- His wages and benefits remained the same; and
- He had no interaction with Gutierrez.

(Ex. C at pp. 164:22 – 166:9.)

7

1

2

Finally, Plaintiff was laid off—along with roughly 500 other employees—at the direction of AECOM Hunt due to COVID-19. (Ex. D at pp. 36:17 – 37:7, and Ex. L.)

3

4

## G.     MATERIAL FACTS RELATED TO PLAINTIFF'S CLAIM FOR NEGLIGENT TRAINING AND SUPERVISION

5

6

7

Plaintiff's FAC maintains that MJ Dean failed to properly train and supervise Gutierrez. However, Colvin admitted in his deposition that he did not have any facts or documents to support his allegation. (Ex. C at pp. 212:23 – 213:1.)

8

9

10

With respect to Plaintiff's allegation that MJ Dean failed to supervise Gutierrez, Plaintiff conceded that Gutierrez was in fact supervised by Brian Long, who was a General Superintendent, and by Thomason, who was the Director of Field Operations. (Ex. C at p. 213:2-18.)

11

12

13

14

Moreover, Plaintiff's counsel never asked any of Defendant's witnesses in their depositions about any aspect of their training or supervision relating to discrimination and/or harassment.

15

16

## III.
## ARGUMENT

17

## A.     LEGAL STANDARD

18

19

20

21

22

23

24

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations omitted).

25

26

27

28

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on

HOWARD & HOWARD ATTORNEYS PLLC

1   which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,

2   323-24 (1986). If the moving party fails to meet its initial burden, summary judgment must be

3   denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress &*

4   *Co.*, 398 U.S. 144, 159–60 (1970).

5       If the moving party satisfies its initial burden, the burden then shifts to the opposing party

6   to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

7   *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the

8   opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

9   that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

10  differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

11  F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary

12  judgment by relying solely on conclusory allegations that are unsupported by factual data. *See*

13  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposition must go beyond the

14  assertions and allegations of the pleadings and set forth specific facts by producing competent

15
16  evidence that shows a genuine issue for trial. *See Celotex Corp. v. Catrett*, at 324.

17
18  **B.    PLAINTIFF'S MOTION FAILS TO ESTABLISH LIABILITY, AS A MATTER**
        **OF LAW, WITH RESPECT TO HIS CLAIM FOR NEGLIGENT TRAINING**
19      **AND SUPERVISION**

20      "The tort of negligent training and supervision imposes direct liability on the employer if

21  (1) the employer knew that the employee acted in a negligent manner, (2) the employer failed to

22  train, and (3) the employer's negligence proximately caused the plaintiff's injuries." *Helle v. Core*

23  *Home Health Servs. of Nev.*, 124 Nev. 1474, 238 P.3d 818 (Nev. 2008).

24
25      Plaintiff's Motion makes the conclusory argument that Defendant must have negligently

26  trained and supervised its managers because Gutierrez called Colvin the N-word once, Plaintiff

27  saw racist graffiti in the bathrooms twice, and Plaintiff heard other unnamed employees make

28  discriminatory remarks during his employment. ***However, Plaintiff fails to provide any evidence***

HOWARD & HOWARD ATTORNEYS PLLC

1

2

*that MJ Dean knew that Gutierrez or other managers acted in a negligent manner or that MJ*

*Dean failed to properly train and supervise its managers.*

3          The reality is that Plaintiff testified that he did not know whether the one person who he

4    claims discriminated against him – Gutierrez – received any training by MJ Dean, and he admitted

5    that Gutierrez was supervised by Brian Long and John Thomason. Further, Plaintiff's counsel

6
never asked any of Defendant's witnesses in their depositions about any aspect of their training
7
or supervision relating to discrimination and/or harassment, Plaintiff's entire argument consists
8
of nothing more than hyperbole and speculation.
9

10          In light of the fact that Plaintiff has no idea about the training MJ Dean provides to its

11    managers concerning discrimination and harassment, and Plaintiff fails to present any material

12    facts indicating that MJ Dean failed to properly supervise its managers, Plaintiff cannot satisfy

13    the basic elements of the claim and Plaintiff's Motion should be denied.

14

15

16

**C.    PLAINTIFF'S CLAIM FOR RETALIATION FAILS AS A MATTER OF LAW
BECAUSE PLAINTIFF CANNOT ESTABLISH A CAUSAL CONNECTION
BETWEEN HIS INTERNAL COMPLAINT AND HIS LAYOFF FIVE MONTHS
LATER DUE TO COVID-19**

17          To establish a claim for retaliation, Plaintiff must show that, (1) he engaged in a protected

18    activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the

19    protected activity and the adverse action. *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D.
20
Nev. 2012), *aff'd sub nom. Van Pelt v. Nevada, ex rel. Nevada Dep't of Corr.*, 637 Fed. Appx.
21
22    307 (9th Cir. 2016).

23          Plaintiff's Motion misrepresents the facts contained in his FAC, by now alleging that he

24    was terminated not only for complaining about Gutierrez on November 14, 2019, but also for

25    complaining about racist graffiti in the restrooms on December 24, 2019 and on January 3, 2020.[1]

26

27

─────────────────────────

28   [1] Plaintiff's FAC only alleges that he was terminated for complaining about Gutierrez on
November 14, 2014. (ECF No. 21, p. 6:4-7.)

10

HOWARD & HOWARD ATTORNEYS PLLC

1  Notwithstanding Plaintiff's misrepresentation of his claim, Colvin testified that he complained

2  about the graffiti to Julian and Tony – neither of whom were involved in Plaintiff's layoff.

3  Accordingly, there is no evidence of a causal connection between Plaintiff complaining about

4  graffiti and his subsequent layoff.

5  The undisputed material facts clearly reflect that Plaintiff's layoff on April 6, 2020, had

6  nothing to do with Colvin complaining about Gutierrez (or anything else for that matter).

7  Plaintiff's Motion cannot dispute the fact that, on April 1, 2020, approximately 5 months after

8
9  Plaintiff complained about Gutierrez, the General Contractor on the Sphere Project, AECOM

10  Hunt, ordered MJ Dean to stop all construction due to COVID-19. *As a result, Plaintiff – along*

11  *with roughly 500 other employees – were all laid off within the following 2-week period.* Further,

12  Plaintiff's Motion cannot dispute the fact that the one person who Plaintiff claims discriminated

13  and harassed him—Gutierrez—had no part in the decision to lay off Colvin. In addition, Plaintiff's

14
15  Motion fails to provide any evidence that MJ Dean did not re-hire Plaintiff because he

16  complained. Once again, Plaintiff's arguments in this regard are unsupported and entirely

17  speculative.

18  Accordingly, Plaintiff cannot establish liability as a matter of law with respect to his claim

19  for retaliation.

20  / / /

21  / / /

22  / / /

23  / / /

24
25  / / /

26  / / /

27  / / /

28  / / /

11

HOWARD & HOWARD ATTORNEYS PLLC

1

## IV.
## CONCLUSION

2

Based on the foregoing, the Court should deny Plaintiff's Motion for Partial Summary

3

Judgment.

4

5   Dated: October 29, 2021                    Respectfully submitted,

6                                              HOWARD & HOWARD ATTORNEYS PLLC

7                                              By: /s/ Robert Rosenthal
                                                   Robert Rosenthal, Esq.
8                                                  Martin A. Little, Esq.
                                                   3800 Howard Hughes Parkway, Suite 1000
9                                                  Las Vegas, Nevada 89169
                                                   *Attorneys for Defendant M.J. Dean*
10                                                 *Construction, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically filed and served upon the following parties on October 29, 2021 through the Court's ECF system.

Law Office of Daniel Marks
Daniel Marks, Esq.
Nicole M. Young, Esq.
610 South Ninth Street
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*

         /s/ Barbara Dunn

Howard & Howard Attorneys PLLC

4881-7173-2737

13