LAW OFFICE OF DANIEL MARKS
DANIEL MARKS, ESQ.
Nevada State Bar No.: 002003
NICOLE M. YOUNG, ESQ.
Nevada State Bar No. 12659
610 South Ninth Street
Las Vegas, Nevada 89101
Office@danielmarks.net
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN,<br><br>  Plaintiff,<br><br>v.<br><br>M.J. DEAN CONSTRUCTION, INC,<br><br>  Defendant,<br>_____/ | Case No. 2:20-cv-01765-APG-EJY<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**<br><br>*Oral Argument Requested* |

### MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

Defendant M.J. Dean's ("MJ Dean") opposition to Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's PMSJ") does not provide this Court with any facts to create a genuine issue of material fact regarding the instant motion for liability on Plaintiff Parnell Colvin's ("Colvin") claims of (1) Negligent Training and Supervision, and (2) Retaliation in violation of Title VII. MJ Dean ignores the facts that establish liability on these claims showing there is no genuine issue of material fact to allow this Court to find liability against MJ Dean. MJ Dean connived racial discrimination in violation of Title VII by not properly training its management to prevent discrimination and failing to enforce its anti-discrimination policies. MJ provides no explanation why it would ever allow Gutierrez (who called Colvin a "nigger) to terminate Colvin's employment. MJ Dean's failure to enforce its anti-discrimination and harassment policies, as well as its termination policy, shows that MJ Dean tolerates racial discrimination and allows pervasive racial discrimination to continue to occur in its workplace.

## II. STATEMENT OF UNDISPUTED FACTS

In its Opposition to Plaintiff's PMSJ, MJ Dean does not dispute the following facts:

1. Racist graffiti has appeared in the bathrooms at the Sphere project 200 different times. (*See* Exhibit 11, at 33:8-18.)
2. Racism at the Sphere project is an ongoing issue. (*See* Exhibit 11, at 33:15-18.)
3. Gutierrez reported the 200 instances of racist bathroom graffiti he saw at work to Safety. (*See* Exhibit 11, at 31:22 to 32:1.)
4. Gutierrez never reported the white supremacist comments he heard at work. (*See* Exhibit 11, at 40:21-25, 41:8-10, & 41:19 to 42:2.)
5. Gutierrez admits he is supposed to report racial slurs and racist graffiti to Rosequist in Safety. (*See* Exhibit 11, at 22:15-25, 23:11-17, & 42:11-16.)
6. Gutierrez was initially Colvin's supervisor. (*See* Exhibit 3; and *see* Exhibit 10, at 89:2-4.)
7. Gutierrez is MJ Dean's General Foreman. (*See* Exhibit 11, at 7:1-3.)
8. Thomason never conducted meetings or trainings regarding MJ Dean's anti-discrimination and harassment policies. (*See* Exhibit 12, at 25:9-17.)
9. Thomason does not know whether any meetings or trainings occurred following Colvin's complaints regarding the racially hostile work environment. (*See* Exhibit 12, at 25:18-21.)
10. Rosequist never conducted meetings or trainings regarding MJ Dean's anti-discrimination and harassment policies. (*See* Exhibit 13, at 18:12-16 & 19:5-18.)
11. While Rosequist decides what information is discussed at weekly safety meetings, he does not know if he had the anti-discrimination and harassment policies discussed. (*See* Exhibit 13, at 18:12-16 & 19:5-18.)
12. Rosequist does not attend weekly safety meetings. (*See* Exhibit 13, at 18:12-16.)
13. MJ Dean did not discuss the anti-discrimination and harassment policies at the weekly safety meetings following Colvin's complaints. (*See* Exhibit 12, at 25:18-21; and *see* Exhibit 13, at 19:5-18.)

14. Rosequist never submitted Colvin's complaint regarding Gutierrez calling him a "nigger" to Human Resources. (*See* Exhibit 13, at 17:23-25.)

15. Neither Tony nor Julian from Safety reported the numerous instances of racist bathroom graffiti to Rosequist. (*See* Exhibit 13, at 15:10-15, 16:10 to 17:3, & 20:10-13.)

16. MJ Dean tolerates racism in its workplace. (*See* Exhibit 12, at 25:18-21; and *see* Exhibit 13, at 17:23-25, 18:12-20, & 19:5-18.)

17. MJ Dean did not follow its termination policy when it had Gutierrez terminate Colvin, instead of Muti, Colvin's supervisor. (*See* Exhibit 4, at APP013.)

18. MJ Dean did not follow its termination policy when it allowed Gutierrez to terminate Colvin without providing him his final check. (*See* Exhibit 4, at APP013.)

19. MJ Dean directed Colvin be terminated by Gutierrez who called Colvin a "NIGGER" five months earlier. (*See* Exhibit 12, at 36:17-19.)

20. Colvin was terminated three months after he complained of racist bathroom graffiti. (*See* Exhibit 10, at 168:11-15 & 169:7-11, 20-25; and *see* Exhibit 9, at APP035.)

21. The Sphere project was only shut down for one week. (*See* Exhibit 12, at 32:25 to 33:10 & 37:7-18.)

22. During the shutdown, some work continued. (*See* Exhibit 12, at 33:2-10.)

23. MJ Dean replaced Colvin. (*See* Exhibit 10, at 186:3-7 & 188:4-6.)

## III. LEGAL ARGUMENT

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude summary judgment as a matter of law. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996); Fed.R.Civ.P. 56(c). The materiality of a fact is based upon the substantive law of the underlying claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

/ / / /

The moving party bears the burden of proving there is no genuine issue of material fact, through the use of authenticated evidence, to show that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *See Orr v. Bank of America*, 285 F.3d 764 (9th Cir.2002). The burden then shifts to the nonmoving party, to survive summary judgment, to establish that there are specific material facts in dispute through use of authenticated evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see Orr*, 285 F.3d at 773.

Here, MJ Dean has failed to provide this Court with any specific material facts to survive summary judgment on liability. Because there are no material facts in dispute regarding Colvin's claims of (1) Negligent Training and Supervision and (2) Retaliation in violation of Title VII, this Court should enter liability against MJ Dean.

### A. It is undisputed that MJ Dean does not enforce its anti-discrimination and harassment policies or take any action to prevent future discrimination after complaints are made.

An "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 112 Nev. 1384, 1393, 930 P.2d 94, 99 (Nev. 1996). "The tort of negligent training and supervision imposes direct liability on the employer if (1) the employer knew that the employee acted in a negligent manner, (2) the employer failed to train or supervise the employee adequately, and (3) the employer's negligence proximately caused the plaintiff's injuries."*Id.*

If racially hostile conduct "pollutes the victim's workplace, making it more difficult for [him] to do [his] job, to take pride in [his] work, and to desire to stay on in [his] position," then a hostile work environment exists. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). Title VII's prohibition of race discrimination and harassment guarantees employees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Id.* at 1112 (9th Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399 (1986)).

////

////

"Employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *McGinest*, 360 F.3d at 1119. To avoid liability, the employer must take "remedial measures reasonably calculated to end the harassment." *Id.* at 1120 (internal quotations omitted). "Inaction constitutes a ratification of past harassment, even if such harassment independently ceases." *Id.* "[R]emedial actions must be designed not only to prevent future conduct by the harasser, but also by other potential harassers." *Id.* at 1121.

Here, MJ Dean knows that it acted in a negligent manner regarding the training and supervision of its management for its failure to enforce its anti-discrimination and harassment policies. MJ Dean argues that all complaints regarding race discrimination and harassment must be in writing, but MJ Dean's policy for reporting discrimination or harassment does not require the report be in writing. (*See* Exhibit 4, at APP015; and *see* Exhibit 5, at APP019.) The only requirement is a report to a supervisor. (*See* Exhibit 4, at APP015; and *see* Exhibit 5, at APP019.) The .)

Racism at the Sphere project is an ongoing issue. (*See* Exhibit 11, at 33:15-18.) Racist graffiti has appeared in the bathrooms at the Sphere project 200 different times. (*See* Exhibit 11, at 33:8-18.) Gutierrez reported the 200 instances of racist bathroom graffiti he saw at work to Safety. (*See* Exhibit 11, at 31:22 to 32:1.) Neither Tony nor Julian from Safety reported the numerous instances of racist bathroom graffiti to Rosequist. (*See* Exhibit 13, at 15:10-15, 16:10 to 17:3, & 20:10-13.)

Gutierrez was initially Colvin's supervisor. (*See* Exhibit 3; and *see* Exhibit 10, at 89:2-4.) Gutierrez is MJ Dean's General Foreman. (*See* Exhibit 11, at 7:1-3.) Gutierrez never reported the white supremacist comments he heard at work. (*See* Exhibit 11, at 40:21-25, 41:8-10, & 41:19 to 42:2.) Gutierrez admits he is supposed to report racial slurs and racist graffiti to Rosequist in Safety. (*See* Exhibit 11, at 22:15-25, 23:11-17, & 42:11-16.) As General Foreman and a supervisor, Gutierrez was required to ensure that the anti-discrimination and harassment policies were followed. Gutierrez admits he did not follow these policies with respect to the white

////

supremacist comments he heard on the job site. (*See* Exhibit 11, at 40:21-25, 41:8-10, & 41:19 to 42:2.) By not reporting all comments he heard, he condoned racial discrimination and harassment in the workplace.

 Thomason was the concrete superintendent on site and has been the Director of Field Operations for MJ Dean for the past four years. (*See* Exhibit 12, at 5:14-16 & 15:21-23.) He was the top MJ Dean executive on the project, owning a 4% share in MJ Dean. (*See* Exhibit 12, at 8:5-10 & 16:14-20.) Thomason has worked in management for MJ Dean for the past 25 years. (*See* Exhibit 12, at 5:24 to 6:9.) Thomason chose Gutierrez as General Foreman for the project, overseeing concrete (*See* Exhibit 11, at 7:1-3.)

 Thomason never conducted meetings or trainings regarding MJ Dean's anti-discrimination and harassment policies. (*See* Exhibit 12, at 25:9-17.) Thomason also does not know whether any meetings or trainings occurred following Colvin's complaints regarding the racially hostile work environment. (*See* Exhibit 12, at 25:18-21.) These meetings and trainings should have occurred following Colvin's complaints because that is the only way to remedy and prevent future racial discrimination and harassment. As a 4% owner of the company, and the face of ownership at the job site, Thomason was required to ensure that these meetings and trainings occurred following Colvin's complaints. By not ensuring these meetings and trainings, he condoned racial discrimination and harassment in the MJ Dean workplace.

 Rosequist was the Project Safety Manager at the Sphere job site. (*See* Exhibit 13, at 8:11-21.) Rosequist never conducted meetings or trainings regarding MJ Dean's anti-discrimination and harassment policies. (*See* Exhibit 13, at 18:12-16 & 19:5-18.) While Rosequist decides what information is discussed at weekly safety meetings, he does not know if he had the anti-discrimination and harassment policies discussed. (*See* Exhibit 13, at 18:12-16 & 19:5-18.) Rosequist does not attend weekly safety meetings. (*See* Exhibit 13, at 18:12-16.) MJ Dean did not discuss the anti-discrimination and harassment policies at the weekly safety meetings following Colvin's complaints. (*See* Exhibit 12, at 25:18-21; and *see* Exhibit 13, at 19:5-18.) Rosequist never submitted Colvin's complaint regarding Gutierrez calling him a "nigger" to

////

Human Resources. (*See* Exhibit 13, at 17:23-25.) By not submitting Colvin's "nigger" complaint to Human Resources and ensuring that trainings and meetings were held after Colvin's complaint, Rosequist condoned the use of racial slurs in the workplace.

Regarding the racist bathroom graffiti, MJ Dean still does not understand its obligations under Title VII to remedy and prevent future racist bathroom graffiti. Removal is not enough! MJ Dean should have conducted over 200 investigations regarding the racist bathroom graffiti. Julian and Tony from Safety should have reported these 200 instances from Gutierrez, and Colvin's two instances, to Rosequist to conduct investigations. Such investigations could have helped determine who was responsible for such graffiti, including interviewing all employees in the areas where such graffiti was present. MJ Dean conducted zero investigations regarding the racist bathroom graffiti. By not conducting any investigations, in violation of its own anti-discrimination and harassment policies, MJ Dean effectively condoned and authorized future instances of racist bathroom graffiti. MJ Dean was also required to then take the next step of conducting meetings and trainings with all of its staff to prevent future instances of racist bathroom graffiti.

It is undisputed that MJ Dean directed its employees to report instances of racism to Safety, based on both Gutierrez and Colvin's reports and Rosequist's response to Colvin's "nigger" report. MJ Dean failed to take any future actions, beyond removal of the graffiti, because it condones racism in the workplace. MJ Dean's anti-discrimination and harassment policies show MJ Dean knows better.

MJ Dean attempts to argue that Colvin does not know what training MJ Dean provides to its managers, but that is not the issue. MJ Dean has a clear anti-discrimination and harassment policy that was not enforced. The management, including 4% owner Thomason and Safety Manager Rosequist, both admit they did not direct any meetings or trainings to occur after Colvin's "nigger" report. That admission shows they did not take the racism issue seriously. On top of that, MJ Dean failed to take the racist bathroom graffiti issue seriously. While removal of the graffiti is important, it is more important to take steps to ensure it will not happen again, including investigations, meetings, and trainings.

As a result, Colvin was injured by MJ Dean's failure to enforce its anti-discrimination and harassment policies. If MJ Dean had properly enforced those policies, then Colvin would not have been subjected to a racially hostile work environment.

Because MJ Dean chose to not take any steps to remedy or prevent future racial discrimination and harassment toward African-Americans, it condoned racial discrimination and harassment in its workplace.

### B. MJ Dean retaliated against Colvin by directing his harasser to terminate his employment.

An employer may not retaliate against an employee because that employee has opposed an unlawful employment practice. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show that he "engaged in a protected activity, [was] subsequently subjected to an adverse employment action, and that a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

Here, Colvin was terminated by Gutierrez (Colvin's harasser). (*See* Exhibit 9; *see* Exhibit 10, at 182:23-25; and *see* Exhibit 11, at 44:5-10 & 182:25 to 183:3.) MJ Dean does not acknowledge this fact in its opposition of its motion for summary judgment. MJ Dean ignores that Gutierrez signed Colvin's termination notice. (*See* Exhibit 9.) MJ Dean provides no explanation why Gutierrez terminated Colvin's employment when Muti was Colvin's supervisor at the time. The termination policy requires the employee's supervisor to make the notifications regarding termination. (*See* Exhibit 4, at APP013.) In fact, MJ Dean argues Colvin had no interaction with Gutierrez after the "nigger" comment. (*See* Doc. 48, at 7:27.) This statement is blatantly false. It is undisputed that Gutierrez is the individual that notified Colvin of his termination and signed the termination notice. (*See* Exhibit 9; and *see* Exhibit 11, at 44:5-10 & 182:25 to 183:3.)

MJ Dean's failure to provide any training or meetings to remedy and prevent future racial discrimination and harassment, coupled with its direction for Gutierrez to terminate Colvin shows MJ Dean's retaliatory motive. MJ Dean refused to take any steps to prevent future racial

////

discrimination and harassment and used Gutierrez (Colvin's harasser) to terminate his employment. These actions show MJ Dean encourages racial discrimination and harassment toward African-American individuals.

Because MJ Dean had Gutierrez (Colvin's harasser) terminate Colvin, instead of his supervisor (Muti), this Court may grant Colvin summary judgment on liability on his Retaliation cause of action because there are no material facts in dispute.

## IV. CONCLUSION

MJ Dean has failed to provide this Court with any specific material facts to prevent judgment, as a matter of law, on liability for the claims of (1) Negligent Training and Supervision and (2) Retaliation in violation of Title VII. Because there are no material facts in dispute, this Court should grant Colvin liability as to those claims.

DATED this 10th day of November, 2021.

LAW OFFICE OF DANIEL MARKS

DANIEL MARKS, ESQ.
Nevada State Bar No. 002003
NICOLE M. YOUNG, ESQ.
Nevada State Bar No. 12659
610 South Ninth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiff

|     |     |
| --- | --- |
| 1   | **CERTIFICATE OF SERVICE** |
| 2   | I hereby certify that I am an employee of the LAW OFFICE OF DANIEL MARKS, and |
| 3   | that on the 10th day of November, 2021, I did serve a true and correct copy of the above and |
| 4   | foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL** |
| 5   | **SUMMARY JUDGMENT ON LIABILITY** by way of Notice of Electronic Filing provided by |
| 6   | the court mandated ECF filing service, upon the Defendant at the following: |

Robert Rosenthal
Howard & Howard Attorneys Pllc
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Attorneys for Defendant

/s/ [signature]
An employee of the
LAW OFFICE OF DANIEL MARKS

Page 10 of 10