Martin A. Little, Esq.
Nevada Bar No. 7067
Robert L. Rosenthal, Esq.
Nevada Bar No. 6476
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: rlr@h2law.com
Email: mal@h2law.com

*Attorneys for Defendant M.J. Dean Construction, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN,<br><br>Plaintiff,<br><br>vs.<br><br>M.J. DEAN CONSTRUCTION, INC,<br><br>Defendant. | Case No. 2:20-cv-01765-APG-EJY<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

## I.
## INTRODUCTION

Plaintiff's Opposition completely ignores the undisputed facts provided in Defendant's Motion, and instead tries to muddy the timeline of events and focuses on allegations that are not even material to his actual claims.

Of critical importance is the undisputed fact that, the first *and only* time that Plaintiff complained about any sort of discrimination or harassment occurred immediately after his General Foreman, Eric Gutierrez ("Gutierrez"), threatened to fire Colvin because he repeatedly refused to follow Gutierrez' work orders. Not surprisingly, Plaintiff's Opposition fails to address the fact that Colvin hoped that, if he claimed Gutierrez discriminated against him, MJ Dean might not terminate his employment, which was exactly what happened.

Plaintiff's Opposition also conveniently ignores the undisputed fact that, *immediately* after Colvin complained about Gutierrez, MJ Dean conducted an internal investigation and complied with general contractor AECOM Hunt's request to have Colvin work in the yard at the Sphere Project so he would no longer have to interact with Gutierrez. *Tellingly, Plaintiff's Opposition does not dispute or even address the fact that Colvin admitted that he was that he was "pleased" with how MJ Dean had resolved his internal complaint against Gutierrez.*

Rather than admitting these material facts, Plaintiff's Opposition fixates on offensive graffiti in the restrooms at that Sphere Project. However, Plaintiff's Opposition omits to mention that, (1) Colvin admitted that he only saw offensive graffiti in the restrooms twice, once on December 24, 2019, and again on January 3, 2020; (2) Colvin told Julian, who was a safety supervisor, about the graffiti both times; (3) Colvin conceded that he never checked to see if the graffiti that he saw on December 24, 2019 had been removed (Colvin DT 176:4-10.); and (4) Colvin admitted that he was "happy" with how MJ Dean handled his report of graffiti on January 3, 2020 (i.e., it was removed) (Colvin DT 171:20-23).

Finally, Plaintiff's Opposition refuses to recognize and admit that Plaintiff's termination had nothing to do with his internal complaint against Gutierrez that he had lodged 5 months earlier, and that he was laid off – along with approximately 500 other employees – solely due to AECOM Hunt's order to shut down the Sphere Project due to COVID-19.

## II.
## ARGUMENT

### A. PLAINTIFF'S OPPOSITION DOES NOT PROVIDE ANY EVIDENCE TO SUPPORT HIS CLAIM FOR RETALIATION

To establish a claim for retaliation, Plaintiff must show that, (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D.

Nev. 2012), *aff'd sub nom. Van Pelt v. Nevada, ex rel. Nevada Dep't of Corr.*, 637 Fed. Appx. 307 (9th Cir. 2016).

Plaintiff's Opposition completely ignores the following <u>*undisputed*</u> material facts:

1. Colvin was laid off in April 2020 – along with approximately 500 other employees – due to COVID-19 (Def. Mot., Ex. D at pp. 36:17 – 37:7, and Ex. O);

2. Gutierrez was not involved in the decision to lay off Colvin[1];

3. John Thomason, MJ Dean's Director of Field Operations, decided who was to be laid off (Def. Mot., Ex. D at p. 36:17-19);

4. Colvin does not claim that Thomason ever said or did anything discriminatory or harassing against him – in fact, Colvin and Thomason both testified that it was Thomason who decided to hire Plaintiff in the first place (Def. Mot., Ex. C at p. 52:21 – 53:2; and Ex. D, at pp. 5:7-13, 8:5-10 and 18:4-6); and

5. Colvin testified that during the approximately 5-month period between when he complained about Gutierrez and when he was laid off, nobody at MJ Dean ever threatened him in any way; his job title, job duties, pay, and benefits remained the same; he liked working with his new supervisor, David Muti; and he never interacted with Gutierrez again (Def. Mot., Ex. C at pp. 164:22 – 166:9).

---

[1] Plaintiff's Opposition claims that it is a disputed fact "whether Gutierrez was involved in the decision to terminate Colvin's employment." (Pl. Opp. at p. 2:23-24.) However, Plaintiff's Opposition fails to provide any evidence in support of this contention. Conversely, Defendant's Motion included testimony from Thomason, who testified that he decided who would be laid off (Def. Mot., Ex. D at p. 36:17-19), and Gutierrez confirmed that he was not involved in decision-making process (Def. Mot., Ex. N at p. 19:20-22).

3

Instead of addressing the above-referenced undisputed facts, Plaintiff jumps to the conclusion that MJ Dean must have retaliated against Colvin simply because Gutierrez signed his termination notice and David Muti did not take part in the layoff. However, these contentions are nothing more than conclusory allegations and Plaintiff's grasping at straws. In short, Plaintiff's Opposition fails to provide *any evidence* of a causal link between Colvin's complaint about Gutierrez and his layoff 5 months later. Accordingly, Plaintiff's cause of action for retaliation must be dismissed.

**B. PLAINTIFF'S CLAIM FOR RACIAL DISCRIMINATION BASED ON DISPARATE TREATMENT MUST BE DISMISSED BECAUSE PLAINTIFF'S OPPOSITION FAILS TO DEMONSTRATE THAT HIS LAYOFF WAS RACIALLY MOTIVATED**

Plaintiff's Opposition neither disputes nor addresses the elements necessary to sustain a claim for racial discrimination based on disparate treatment, which consist of the following: (1) that Plaintiff belongs to a protected class; (2) that Plaintiff was qualified for the position; (3) that Plaintiff was subject to an adverse employment action; and (4) similarly situated individuals outside Plaintiff's protected class were treated more favorably. *Yamaguchi v. Atlantis Casino Resort*, 2019 WL 4738009 at *4 (D. Nev. 2019) (slip copy).

In the present case, MJ Dean concedes that Plaintiff satisfies the first three elements of the claim because, (1) Colvin is African American; (2) Colvin was qualified for the job; and (3) Colvin was subjected to an adverse employment action by virtue of the fact that he was laid off. However, Plaintiff's Opposition tries to conflate the third and fourth elements by alleging that Colvin was treated differently than other employees, while simultaneously ignoring the *undisputed* fact that the *only* adverse employment action suffered by Colvin occurred when he was laid off in April 2020 – an event that was completely unrelated to his complaint about Gutierrez 5 months earlier.

4

Additionally, Plaintiff's Opposition fails to provide any evidence that satisfies the fourth element of the claim – that employees who were not African American were treated more favorably than Colvin (i.e., they were not laid off). Plaintiff's lack of evidence in this regard is not surprising in light of the undisputed fact that roughly *500* other employees were laid off at the same time as Plaintiff. As such, there is simply no evidence that Plaintiff was treated differently than anybody else outside of his protected class.

Accordingly, pursuant to the holding in *Yamaguchi*, Plaintiff's claim for racial discrimination under Title VII and NRS 613.310 must be dismiss because Colvin cannot satisfy the fourth element of the claim.[2]

C. **PLAINTIFF'S CLAIM FOR RACIAL HARASSMENT FAILS AS A MATTER OF LAW BECAUSE THE ALLEGED WRONGFUL CONDUCT WAS NEITHER SEVERE NOR PERVASIVE TO ALTER THE CONDITIONS OF EMPLOYMENT AND CREATE AN ABUSIVE WORK ENVIRONMENT**

"Racial harassment occurs when a plaintiff is subject to unwelcome verbal or physical conduct based on race that is 'sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive work environment.'" *Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F.Supp.3d 1267 (D. Nev. 2015) *citing Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). Plaintiff's state law cause of action for racial harassment under NRS 613.330 must be analyzed under the same framework as his federal claims. *See Roberts v. Clark County School District*, F.Supp.3d 1001, 1115 (D. Nev. 2016).

---

[2] Plaintiff's Opposition argues that, because Colvin established a prima facie case of discrimination based on disparate treatment, the claim must be analyzed under a burden shifting framework. *See Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090 (9th Cir. 2005). Plaintiff misses the point – as explained above, Colvin has not satisfied the elements necessary to establish a prima facie case of racial discrimination. Therefore, there is no need to analyze the claim under a burden shifting framework. But even if the Court considers Plaintiff's argument, it is without merit, because MJ Dean's Motion provided sufficient documents and testimony proving that Colvin was laid off for legitimate nondiscriminatory reasons (i.e., that Colvin and 500 other employees were all laid off due to COVID-19). (Def. Mot., Ex. D at pp. 36:17 – 37:7, and Ex. O.) Plaintiff's arguments to the contrary are nothing more than conclusory and unsupported allegations.

5

Tellingly, Plaintiff's Opposition fails to even address Defendant's citation and reliance on *Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 Fed. Appx. 181 (9th Cir. 2010), which is analogous to the instant action. In *Harris*, plaintiff sued his employer for racially hostile work environment under Title VII and Oregon state law, claiming that a co-worker called him the N-word *twice*. *Id.* at *1. The Court granted summary judgment, holding that use of the N-word *twice* was neither pervasive nor severe enough to support plaintiff's claim. *Id.* Significantly, the Court noted that, after complaining, plaintiff was not subjected to any further harassment. *Id.*

The holding and reasoning in *Harris* should be applied here, particularly because Colvin alleges that he was called the N-word once. Furthermore, just like the plaintiff in *Harris*, Colvin admitted that after he complained about Gutierrez, he was not subjected to any further harassment for the remainder of his employment, and that he was able to perform all of his job duties without issue.

Plaintiff's Opposition ignores these salient and undisputed facts, and instead tries to imply that Colvin must have been subjected to a hostile work environment because *Gutierrez* observed offensive graffiti at the worksite numerous times. However, this is a red herring, as the only relevant issue is what *Colvin* allegedly saw and heard, not Gutierrez. As discussed above and in Defendant's Motion, it is undisputed that Colvin only saw racist graffiti at the worksite twice; it was erased on one occasion, and Colvin did not even bother to check if it had been removed the other time.

Plaintiff's own actions clearly reflect that the alleged conduct was neither severe nor pervasive. Accordingly, Plaintiff's state and federal claims of racial harassment must be dismissed.

/ / /

/ / /

/ / /

6

### D. PLAINTIFF'S CLAIM FOR NEGLIGENT TRAINING AND SUPERVISION MUST BE DISMISSED BECAUSE PLAINTIFF'S OPPOSITION FAILS TO PROVIDE ANY EVIDENCE THAT DEFENDANT KNEW THAT ITS EMPLOYEES ACTED IN A NEGLIGENT MANNER AND/OR FAILED TO TRAIN ITS EMPLOYEES

In order for Plaintiff to sustain a claim for negligent training and supervision, Colvin must prove as a matter of law that, (1) MJ Dean knew that its managers acted in a negligent manner, (2) MJ Dean failed to train its managers, and (3) MJ Dean's negligence proximately caused Plaintiff's injuries. *See Helle v. Core Home Health Servs. of Nev.*, 124 Nev. 1474, 238 P.3d 818 (Nev. 2008).

Plaintiff's Opposition makes the conclusory and simplistic argument that, because Colvin claims that Gutierrez called him the N-word once, that Plaintiff saw racist graffiti in the bathrooms twice, and that Plaintiff heard other unnamed employees make discriminatory remarks, Defendant must have negligently trained and supervised its managers. However, this is not evidence, it is argument. Indeed, Plaintiff's Opposition fails to provide *any* actual evidence that MJ Dean knew that Gutierrez or others acted in a negligent manner or that MJ Dean failed to properly train and supervise its managers. Tellingly, Plaintiff's counsel never even asked any of Defendant's witnesses in their depositions about any aspect of their training or supervision relating to discrimination and/or harassment.

Moreover, Plaintiff's allegations concerning negligent training and supervision are directly contradicted by the following *undisputed* facts: On the same day that Colvin complained about Gutierrez, MJ Dean conducted an internal investigation, which immediately resulted in Plaintiff no longer having to work with Gutierrez for the remainder of his employment. Indeed, Colvin even testified that he was "pleased with the outcome." Not surprisingly, Plaintiff's Opposition also ignores this very significant and material fact.

Additionally, Plaintiff's Opposition disregards Colvin's own deposition testimony, where he admitted that he did not know whether the one person who he claimed discriminated against

7

him, Gutierrez, received any training by MJ Dean. Plaintiff also acknowledged that Gutierrez was indeed supervised – by Brian Long and John Thomason.

Given that Plaintiff literally has no idea about the nature and extent of training and supervision that MJ Dean provides, Plaintiff cannot satisfy the essential elements of the claim and the Court must dismiss this cause of action.

## III.
## CONCLUSION

Based on the foregoing, the Court should grant Defendant's Motion for Summary Judgment.

Dated: November 12, 2021

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Robert Rosenthal
Robert Rosenthal, Esq.
Martin A. Little, Esq.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
*Attorneys for Defendant M.J. Dean Construction, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically filed and served upon the following parties on November 12, 2021 through the Court's ECF system.

Law Office of Daniel Marks
Daniel Marks, Esq.
Nicole M. Young, Esq.
610 South Ninth Street
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*

          /s/ Barbara Dunn
Howard & Howard Attorneys PLLC

1