UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN,<br><br>    Plaintiff,<br><br>v.<br><br>M.J. DEAN CONSTRUCTION, INC.,<br><br>    Defendant. | Case No.: 2:20-cv-01765-APG-EJY<br><br>**Order Granting in Part Defendant's Motion for Summary Judgment, Denying Plaintiff's Motion for Partial Summary Judgment, and Denying Plaintiff's Motions to Strike and Exclude Witnesses**<br><br>[ECF Nos. 43, 44, 45, 49] |

    Plaintiff Parnell Colvin sues his former employer, M.J. Dean Construction, Inc. (Dean), alleging retaliation, discrimination, and harassment in violation of Title VII and state law, as well as negligent training and supervision. Colvin's claims arise out of racism he allegedly experienced while working for Dean as a laborer on the Madison Square Garden Sphere project, and Dean's subsequent termination of his employment. Dean moves for summary judgment on all claims. Colvin moves for partial summary judgment on his retaliation and negligent training and supervision claims. Colvin also moves to exclude three witnesses and strike their respective declarations attached as exhibits to Dean's motion.

    I grant in part Dean's motion for summary judgment, deny Colvin's motion for partial summary judgment, and deny as moot Colvin's motions to strike and exclude. A reasonable jury could not conclude that Dean discriminated against Colvin when it terminated his employment. However, a reasonable jury could conclude that Colvin's termination was retaliatory, that his lack of access to overtime opportunities was discriminatory, that his treatment was sufficiently severe and pervasive that it fostered an abusive work environment, and that Dean deficiently trained and supervised its employees. Consequently, summary judgment in Dean's favor is

appropriate only as to Colvin's discriminatory firing claim. Colvin's claims for retaliation, discrimination relating to overtime opportunities, harassment, and negligent training and supervision remain.

I. **BACKGROUND**

In July 2019, Dean hired Colvin to work as a laborer on the Madison Square Garden Sphere project. ECF No. 44-1 at 45, 92-96.[1] Kevin Gutierrez was Colvin's supervisor. *Id.* at 100. Colvin states that, beginning his first day and continuing onwards, Gutierrez treated him poorly. *See, e.g., id.* at 105-07 (explaining that Gutierrez looked at Colvin "like [he] was a piece of shit," assigned him too many tasks to complete in a day, and sent him to other crews that did not have work for him). Colvin also contends Gutierrez refused him opportunities to work overtime during his first few weeks on the job. *Id.* at 121-23.

In November 2019, Colvin confronted Gutierrez regarding his perceived mistreatment. *Id.* at 137-38. Colvin claims that Gutierrez started "screaming and yelling and throw[ing] his hands up," and said, "I'm not fucking doing this, you fucking nigger." *Id.* at 138. Gutierrez denies calling Colvin the slur. ECF Nos. 44-2 at 24; 43-10 at 3. Colvin complained about the incident to management, an investigation ensued, and Colvin was transferred to a new supervisor, Dave Muti. ECF Nos. 44-1 at 142-43; 43-9 at 2-3; 43-11 at 3-4. Colvin worked under Muti for the remainder of his employment with Dean. ECF No. 44-1 at 144.

On December 24, 2019, and January 3, 2020, Colvin observed offensive graffiti in two separate restrooms on the jobsite. *Id.* at 179-87; *see also, e.g., id.* at 34, 35 (restroom graffiti read "burn all niggers," "white power," and "black laborers = lazy[,]" while also depicting a possible

---

[1] I advise the parties to comply with Local Rules IA 10-3 and IC 2-2(a)(3) in the future. Discrete exhibits must be individually filed, not filed in omnibus compilations. And "[d]ocuments filed electronically must be filed in a searchable" format. *See* LR IA 10-1.

swastika and other vulgarities). He reported the graffiti to safety personnel. *Id.* at 181, 185. He states that the graffiti was removed from one of the bathrooms, but that he is unsure of whether it was removed from the other. *Id.* at 182, 186.

In early April 2020, the Madison Square Garden Company directed the Sphere project to shut down by April 15 due to the developing COVID-19 pandemic. ECF No. 43-16 at 2. Dean laid off 500 employees during the shutdown. ECF No. 43-5 at 10-11. Colvin was among those laid off, receiving his termination notice from Gutierrez on April 6. ECF Nos. 43-4 at 43; 43-17 at 2. Dean rehired 200 employees when work eventually resumed, but Colvin was not rehired. ECF No. 43-5 at 10-11.

Colvin filed a charge of discrimination with the EEOC, contending that Dean subjected him to a hostile work environment and discriminatorily terminated his employment. ECF No. 44-1 at 4. He received a right to sue letter in June 2020 and filed this lawsuit the following September. ECF Nos. 44-1 at 4, 6; 1. Dean does not dispute that Colvin timely exhausted his administrative remedies and filed suit. ECF No. 44 at 2. Dean now moves for summary judgment on all of Colvin's claims, and Colvin moves for partial summary judgment on his claims for retaliation and negligent training and supervision. Colvin also moves to exclude three witnesses and strike their respective declarations for purposes of the summary judgment motions.

## II.  ANALYSIS

Summary judgment is proper where a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The

moving party bears the initial burden of informing the court of the basis of its motion and the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the moving party can meet its initial burden by "pointing out through argument . . . the absence of evidence to support plaintiff's claim").

Once the moving party carries its burden, the nonmoving party must "make a showing sufficient to establish the existence of [the disputed] element to that party's case." *Celotex*, 477 U.S. at 322.  I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A.     Retaliation**

Dean argues that Colvin fails to establish a causal connection between his November internal complaint about Gutierrez and his termination the following April, particularly because Dean fired Colvin during the COVID-19 shutdown.  Colvin opposes and moves for summary judgment on the claim.  He argues that a causal connection exists because Gutierrez, his alleged harasser, signed his termination notice and personally delivered it to him, even though Muti was his supervisor at the time.

Under Title VII,[2] establishing a claim of retaliation requires that Colvin "show that he engaged in a protected activity, [that] he was subsequently subjected to an adverse employment

---

[2] Colvin brings his first three claims under both Title VII and Nevada Revised Statutes (NRS) §§ 613.330 & 613.340.  The parties do not analyze the claims separately under state and federal law because §§ 613.330 & 613.340 are "almost identical to" 42 U.S.C. § 2000e-2. *Samuels v.*

4

action, and that a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).  The causal link element "can be inferred from circumstantial evidence such as the employer's knowledge of the protected activit[y] and the proximity in time between the protected activity and the adverse action." *Id.*  Once a plaintiff establishes a prima facie case, "the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons." *Id.*  If the employer provides a legitimate explanation, the burden shifts back to the plaintiff to "show that the [employer's] explanation is merely a pretext." *Id.*

Viewing the evidence in a light most favorable to the nonmoving party, neither party is entitled to summary judgment on Colvin's claim for retaliation.  Even though Colvin's termination occurred more than four months after his confrontation with Gutierrez, a reasonable jury could infer a causal connection based on the totality of circumstantial evidence, including Gutierrez's possible participation in the termination.  A mass layoff during the COVID-19 pandemic is highly persuasive evidence that Colvin was terminated for a legitimate, non-discriminatory reason, thereby precluding summary judgment for Colvin.  However, a reasonable jury could also conclude that the extent to which Gutierrez, Colvin's alleged harasser, participated in the layoff decision instead of Colvin's supervisor at the time, Muti, raises a genuine dispute as to whether the COVID-19 justification was pretextual.  Consequently, I deny both parties' motions for summary judgment as to Colvin's retaliation claim.

---

*We've Only Just Begun Wedding Chapel, Inc.*, 154 F. Supp. 3d 1087, 1093 (D. Nev. 2015); *see also Apecech v. White Pine Co.*, 615 P.2d 975, 977-78 (Nev. 1980) (noting that NRS § 613.330 and 42 U.S.C. § 2000e-2 are almost identical, and analyzing § 613.330 according to federal precedent); *Pope v. Motel 6*, 114 P.3d 277, 280-82 (Nev. 2005) (noting the similarity between Title VII and Nevada's anti-discrimination statutes, and following federal precedent in interpreting § 613.340).

B.      **Discrimination**

Dean argues that Colvin cannot prove Dean subjected him to disparate treatment because Dean terminated 500 employees due to the COVID-19 shutdown.  Colvin argues that Dean subjected him to disparate treatment by sending him to work on crews that did not need his help, by disallowing him to work overtime hours while allowing Hispanic workers to do so, and by forcing him to clean-up nails and scrap on his hands and knees.

Under Title VII, establishing a claim of unlawful discrimination requires that Colvin show that: "(1) he belongs to a protected class; (2) he was qualified for [his] position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. Cal. Davis Bd. Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

A reasonable jury could not conclude that Dean subjected Colvin to disparate treatment by firing him.  Colvin provides no evidence regarding the class composition of the terminated group or of any non-terminated employees.  He likewise provides no evidence of class composition relating to the rehired group of 200 employees.  Even viewing the evidence in a light most favorable to Colvin, insufficient facts exist to allow a reasonable jury to determine that similarly situated individuals outside Colvin's protected class were treated more favorably in the context of his termination. *See Chuang*, 225 F.3d at 1123.

Dean does not address the portions of Colvin's discrimination claim relating to the allocation of opportunities to work overtime and to his being subjected to degrading treatment. *See* ECF No. 21 at 7 (alleging that Dean did not provide Colvin with overtime opportunities provided to non-African American employees, and that Dean degraded him in ways not experienced by non-African American employees).  An "adverse employment action" for

purposes of Title VII discrimination is broadly defined and includes circumstances in which "an employer's action negatively affects its employee's compensation," like a denial of overtime opportunities. *Fonseca v. Sysco Food Srvs. of Ariz., Inc.*, 374 F.3d 840, 847-49 (9th Cir. 2004). Colvin states that Gutierrez provided similarly situated Hispanic workers with overtime opportunities but denied them to him. ECF No. 44-1 at 121-22. A reasonable jury could conclude that similarly situated individuals outside of Colvin's protected class were treated more favorably with respect to the allocation of overtime opportunities. While I have my doubts, I will not decide whether disparate subjection to degrading treatment constitutes a cognizable adverse employment action for purposes of a Title VII discrimination claim because Dean failed to move on this portion of Colvin's claim. Consequently, I grant Dean's motion for summary judgment as to Colvin's alleged discriminatory firing, but Colvin may go forward on the claim based on denial of overtime opportunities and disparate degradation.

C. **Harassment**

Dean argues that, even if Colvin's account of his confrontation with Gutierrez is correct, a single instance of being called a racial slur is not severe and pervasive enough to alter one's conditions of employment or create an abusive work environment. Colvin responds that a single utterance of the slur is sufficient evidence of a hostile work environment given its extraordinarily offensive and inflammatory nature. Colvin also argues that the restroom graffiti he twice observed proves the severity and pervasiveness of his harassment on the jobsite.

Under Title VII, establishing a harassment claim requires Colvin to show "(1) that [he] was subjected to verbal or physical conduct based on [his] race or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Galdamez v. Potter*,

415 F.3d 1015, 1023 (9th Cir. 2005) (simplified).  Conduct is sufficiently severe and pervasive to alter the conditions of employment if it "pollutes the victim's workplace, making it more difficult for [him] to do [his] job, take pride in [his] work, and to desire to stay on in [his] position." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (simplified).  To satisfy the third element, Colvin "must [also] show that [his] work environment was both subjectively and objectively hostile." *Galdamez*, 415 F.3d at 1023.  Analyzing objective hostility requires consideration of the totality of the circumstances, and "must be considered from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *Id.* (simplified).

A reasonable jury could conclude that the conduct to which Colvin was subjected was sufficiently hostile to constitute an abusive work environment.  Subjectively, Colvin found the confrontation with Gutierrez to be disturbing enough that he reported it to management. ECF Nos. 44-1 at 142-43; 43-9 at 2-3; 43-11 at 3-4.  He also states that he reported both graffiti incidents to safety personnel, and the graffiti was sufficiently upsetting that he avoided using those restrooms. *Id.* at 181, 185.

Objectively, a jury could conclude that the circumstances were objectively hostile.  The Ninth Circuit has recognized that "[i]t is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination.  This word is perhaps the most offensive and inflammatory racial slur in English, . . . a word expressive of racial hatred and bigotry." *McGinest*, 360 F.3d at 1116.

The graffiti Colvin observed was of a similar nature.  Writing in one restroom read "burn all niggers," and "white power," while also depicting a possible swastika and other vulgarities. ECF No. 44-1 at 34.  Writing in the other restroom read "black laborers = lazy!" *Id.* at 35.  Dean

argues that the Ninth Circuit has previously found that two instances of being subjected to the racial epithet "nigger" were insufficiently severe and pervasive to support a hostile work environment claim. *See Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 Fed. App'x 181, 182-83 (9th Cir. 2010). However, the court in *Harris* noted that the epithets there were not accompanied by any physical threats or symbols of racial violence. *Id.* The facts here are different because the graffiti implicated the physical threat of burning, as well as a possible swastika, thereby enhancing the severity of the harassment. Given the totality of the circumstances, a jury could conclude that a reasonable African American in Colvin's situation would perceive it to be hostile, so Colvin's showing of both subjective and objective hostility is sufficient at this stage. A jury could also conclude that the hostility was sufficiently severe and pervasive that it altered the conditions of Colvin's employment. Consequently, I deny Dean's motion for summary judgment as to the harassment claim.

### D. Negligent Training and Hiring

Dean argues that Colvin fails to provide evidence of insufficient training and supervision, and that Gutierrez was supervised by a general superintendent and the director of field operations. Colvin opposes and moves for summary judgment on the claim. He argues that Dean failed to properly train its management employees to remedy a racially hostile work environment, that multiple employees failed to report instances of graffiti to management, and that management's investigation of the confrontation between Colvin and Gutierrez was inadequate. Colvin concludes that "Dean's tolerance of racism in the workplace shows none of its employees and supervisors were actually trained," and, "[e]ven if there was training, it is clear there was a failure to supervise." ECF No. 44.

To establish a claim of negligent training and supervision under Nevada law, Colvin must show: "(1) the employer knew that the employee acted in a negligent manner, (2) the employer failed to train or supervise the employee adequately, and (3) the employer's negligence proximately caused the plaintiff's injuries." *Helle v. Home Health Servs. of Nev.*, No. 48427, 2008 WL 6101984, at *3 (Nev. 2008) (citing *Hall v. SFF, Inc.*, 930 P.2d 94, 98 (Nev. 1996)); *Oehler v. Humana, Inc.*, 775 P.3d 1271, 1272 (Nev. 1989)).

Colvin does not clearly present his negligent training and supervision claim. At times, he seems to argue that Dean improperly trained and supervised its supervisors. He also seems to argue that these supervisors, in turn, improperly trained and supervised others. The precise nature of Colvin's argument and the extent to which negligent training or supervision may apply to discrete employees—and in what capacity—is ambiguous. Consequently, I deny Colvin's motion for summary judgment on this claim.

Although not a strong claim, when viewing the evidence in a light most favorable to Colvin on Dean's motion, a reasonable jury could infer from Gutierrez's deposition testimony that the graffiti was sufficiently pervasive over an extended period that some negligence in training or supervision existed. *See* ECF No. 44-2 at 31-35 (stating that between 2019 and 2020 Gutierrez observed approximately 200 instances of racially charged restroom graffiti). A reasonable jury could likewise infer that, had the issue been properly addressed in the past, it would not have persisted such that Colvin would be exposed to it. Consequently, I deny Dean's motion for summary judgment on Colvin's negligent training and supervision claim.

E. **Motions to Strike and Exclude**

Colvin seeks to exclude three witnesses and strike their respective declarations attached to Dean's motion for summary judgment. The declarations concern whether Gutierrez called

Colvin a racial slur during their confrontation, and whether Colvin reported the graffiti to safety personnel. The declarations do not alter my decisions on the parties' dispositive motions. Consequently, I deny as moot Colvin's motions to exclude witnesses and strike exhibits.

### III.  CONCLUSION

I THEREFORE ORDER that defendant M.J. Dean Construction, Inc.'s motion for summary judgment **(ECF No. 43) is GRANTED in part** as detailed above.

I FURTHER ORDER that plaintiff Parnell Colvin's motion for partial summary judgment **(ECF No. 44) is DENIED.**

I FURTHER ORDER that Plaintiff Parnell Colvin's motions to strike and exclude **(ECF Nos. 45, 49) are DENIED as moot.**

DATED this 10th day of June, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE