**EXHIBIT T**

**EXHIBIT T**

Las Vegas Justice Court
Electronically Filed
12/15/2022 2:15 PM
Melissa Saragosa
CLERK OF THE COURT

JUSTICE COURT, LAS VEGAS TOWNSHIP

CLARK COUNTY, NEVADA

TAKO LLC,
            Landlord;

vs.

PARNELL COLVIN, ETAL.

            Tenant.

CASE NO.: 21E014316

JC Evictions Department

### AFFIDAVIT OF DAVID F. BROWN IN RESPONSE TO TENANT'S "MOTION FOR RECUSAL OF HEARING MASTER DAVID BROWN FROM HEARING SAID CASE FOR HIS BIASES AND PREJUDICES TOWARDS PARNELL COLVIN AND BLACK TENANTS THAT COME BEFORE HIM"

I, David F. Brown, solemnly swear as follows:

1. I make this Affidavit on my own personal knowledge, as well as information obtained through review of pleadings and orders filed in other court actions in which Tenant has been a party.

2. I am a Hearing Master of the Las Vegas Justice Court assigned to adjudicate summary eviction cases.

3. The instant case was initiated on June 2, 2021 with Landlord's service upon Tenant of a "Thirty-Day 'No Cause' Notice to Quit" pursuant to NRS 40.251. This notice was then followed by a Five-Day Unlawful Detainer Notice served by Landlord upon Tenant on July 15, 2021. Tenant filed an Affidavit on July 19, 2021 contesting Landlord's eviction notices. Landlord filed its Complaint for Summary Eviction on July 28, 2021. The matter was set for hearing on September 7, 2021 by court staff pursuant to the requirements of NRS 40.253(6). After seventeen months, the case has yet to have a hearing.

4. This matter is not a typical summary eviction case which would generally be adjudicated within a couple of months. The matter has been pending for seventeen

1

1     months. Five hearings have been vacated based upon Tenant's filing of multiple
2     bankruptcy actions and five attempts to remove to federal court. (I will supplement this
3     affidavit with court and case numbers should the reviewing judge so direct. However,
4     these cases are a matter of record in the U.S. District Court of Nevada and the U.S.
5     Bankruptcy Court of Nevada.)

6     5. On November 12, 2022, Tenant's fifth removal case was remanded by Judge
7     Gordon of the U.S. District Court of Nevada. On the same day, Judge Silva, who
8     remanded the fourth removal case on December 5, 2022, entered an order in Case No.
9     2:22-cv-01928-CDS-NJK determining Tenant to be a vexatious litigant and precluding
10    him from filing for removal of eviction cases or complaints relating to landlord/tenant
11    laws unless he first seeks and obtains permission from the Chief Judge of the U.S.
12    District Court of Nevada.

13    6. Based upon these last actions of the U.S. District Court, this matter has been
14    placed back on calendar for hearing on December 19, 2022, 10:00 a.m.

15    7. This Affidavit is filed pursuant to NRS 1.235(6)(b).

**TENANT'S MOTION TO RECUSE SHOULD BE DENIED ON TENANT'S FAILURE TO FOLLOW REQUIRED PROCEDURE**

18    8. NRS 1.235 governs a party's effort to disqualify a judicial officer such as myself for
19    actual or implied bias. It contains various service and timing requirements. The timing
20    requirements are intended, in part, to prevent a party from seeking a new judicial officer
21    well into a judicial proceeding which would serve to delay the case.

22    9. NRS 1.235(4) provides: "At the time the affidavit is filed, a copy must be served
23    upon the judge sought to be disqualified. Service must be made by delivering the copy to
24    the judge personally or by leaving it at the judge's chambers with some person of
25    suitable age and discretion employed therein."

26    10. Tenant filed his "Motion For Recusal Of Hearing Master David Brown From
27    Hearing Said Case For His Biases And Prejudices Towards Parnell Colvin And Black

2

1  Tenants That Come Before Him" (hereinafter "Motion to Recuse") on December 8,
2  2022. Tenant failed to serve his affidavit upon me, either personally or by leaving a
3  copy in chambers or with a court clerk. Thus, Tenant's Motion may be denied based
4  upon his failure to comply with the service requirements. I only learned of Tenant's
5  Motion after he simply electronically filed it with the court along with two other
6  motions. A clerk familiar with the case happened to process the filing of Tenant's
7  motion and brought it to my attention.
8  11. Tenant filed his Motion to Recuse on December 8, 2022, approximately 16.5
9  months after my order setting the first hearing date of September 7, 2022, which order
10 put Tenant on notice that I was the judicial officer assigned to the case. Thereafter, I
11 signed six orders in this matter: three hearing vacate orders on January 19, 2022, August
12 23, 2022, and November 16, 2022. Each of these orders were signed by me after Tenant
13 filed his newest iteration of removal or bankruptcy notice. I also signed an order on
14 October 5, 2022 denying Landlord's Motion to Place on Calendar on the basis of
15 another Tenant removal filing, also clarifying and correcting an erroneous order of Pro
16 Tem Holly Stoberski who signed an order setting the matter for hearing after Landlord
17 filed a document showing Tenant's bankruptcy stay ended. Each of these orders favored
18 Tenant. Tenant did not complain of bias regarding these orders nor did he file for
19 disqualification after each of my actions.
20 12. NRS 1.235(1) requires that: "the affidavit must be filed: (a) Not less than 20 days
21 before the date set for trial or hearing of the case; or (b) Not less than 3 days before the
22 date set for the hearing of any pretrial matter."
23 13. Tenant did not file his Motion 20 days before the September 7, 2021 hearing after I
24 had ordered the setting. Nor did he file it before I took action on any pretrial matter
25 such as the six different motions which the court ruled upon during the following 17
26 months. Only after the U.S. District Court remanded for the fourth time and ordered
27 Tenant to show cause why he should not be deemed a vexatious litigant, increasing the
28

3

1  likelihood of an imminent hearing, did Tenant file a Motion to Recuse. NRS 1.235(1)
2  makes it clear that a motion to disqualify must not be used to delay a proceeding.
3  Tenant's grossly tardy Motion to Recuse, if granted, will only have the effect of
4  delaying the long overdue hearing.
5  14. Based upon failure to properly serve his Motion to Recuse and its grossly untimely
6  submittal, Tenant's Motion to Recuse must be denied.

**AS TO TENANT'S ALLEGATIONS OF BIAS**

15. It might be worth stating up front that Tenant has alleged bias and even conspiracy of two other judges, Judge Gall of the Eighth Judicial District Court and Judge Silva of the U.S. District Court after they rendered unfavorable decisions against Tenant in the cases he filed against Landlord in both courts. He contended in his motion to disqualify Judge Silva that Judges Gall and Silva conspired to deny him constitutional rights. It seems when Tenant has an unfavorable decision, he resorts to allegations of bias and motions to recuse.

16. To support his allegations of bias, Tenant alleged that he knows the court calls cases in alphabetical order and that the I, in one prior hearing, intentionally held his case to the end of the calendar to make him wait. To this, I respond as follows. First, Tenant's suggestion that the court uses an alphabetical order for calling cases is untrue. In fact, it's silly if not preposterous. Perhaps the listing of cases on the outside monitors in alphabetical order gave him this notion. At any rate, most judges will call matters in order of party check-in or at their discretion to best manage the day's hearings. In summary eviction proceedings, clerks set hearings dates and times as cases are filed on 30 or 60 minute stacks. I generally try to move through the stacks in order to be fair to all litigants.

17. In Tenant's matter, I did hold his hearing until the end for two reasons which are the basis of my courtroom case management. Firstly, if I have 30 cases with 60 parties in a session, and if I believe one hearing is more complicated and may require more time, I

4

will delay calling the complicated case so as not to make 58 other litigants wait 45 minutes (the approximate duration of Tenant's hearing). Rather, I will require two litigants to wait perhaps 2 hours or more while I call other cases which require little time. I generally explain this to the parties so they know it was not an intentional slight. I do this to minimize the aggregate number of human hours "wasted" waiting in a courtroom. Secondly, when I believe a hearing needs more time, I will hold it to the end so as to give the parties full opportunity to present evidence and argue their case rather than cut them short.

18. In Tenant's case where I delayed calling the matter, a clerk error in matching Tenant's contesting affidavit with Landlord's complaint had lead to a "default" summary eviction. This required Tenant to come to the courthouse on an emergency basis to seek stay and set aside. The Tenant, in that matter, accused me of intentionally manipulating court procedures to grant an eviction. This was untrue as I would not have been aware of him in a "default" case. At the hearing, I painstakingly took time to explain in complete detail to Tenant the discrepancies in information contained in the parties' pleadings, and the procedures and practices of the court which all contributed to the erroneous eviction order. It seems my efforts to explain to him what had occurred fell on deaf ears as he took it as an offense that I held his case to the end of the calendar. Notwithstanding, I showed no bias toward him and my ruling certainly bore that out.

19. Tenant further alleged that while he waited for his case to be called he watched me handle many cases. He alleged that I was biased toward African American tenants, that ruled in favor of landlords without just cause and did not allow tenants to speak. I deny these allegations. My record of six years on the bench, handling approximately 180,000 evictions and holding approximately 30,000 hearings belies such allegations which are easily made up. Any pattern of discriminatory bias over my six years would have been discovered and addressed by the court.

5

20. I will however comment on Tenant's assertion that I cut other tenants off while they were testifying. Evictions almost always involve pro se litigants. The hearings are often emotionally charged proceedings because the results can be very dire. I am very mindful of this. It is important to me to give litigants a full opportunity to speak and present their cases. That being said, the cases are summary in nature, generally with few relevant facts. Dockets are crowded and judicial officers must manage court time. Accordingly, I as well as other judicial officers will limit testimony to RELEVANT facts pertaining to the particular type of eviction case. Often, both parties want to introduce facts that are irrelevant. In those instances, in order to manage court time, the court will interrupt testimony of both landlord and tenant. Some parties do not give heed to my directive to comment only on relevant matters and sometimes become combative. I attempt to keep matters cordial and professional, but if litigants are determined to speak over the court or disregard instruction, the court will abruptly cut them off.

21. Tenant has been energetic and determined in his prior hearings, sometimes speaking out of turn, interrupting the court or the landlord or delving into irrelevant facts. In those instances, I have had to be abrupt with Tenant.

## HISTORICAL PERSPECTIVE ON A CASE WHICH IS ANYTHING BUT NORMAL

22. Tenant and his wife have filed thirteen bankruptcy petitions since 2015. Each time, they have been engaged in summary eviction proceedings. Not one of their thirteen bankruptcies has led to discharge of debt. Each has been dismissed for failure to file schedules or by trustee motion to dismiss for failure to prosecute the bankruptcy to conclusion. Tenant suggests it improper for me to remark on the issue of his bankruptcy filings. They are significant to this hearing officer for at least two reasons.

23. First, even though Tenant swore in his bankruptcy petitions to report any prior bankruptcy filings within the last eight years, Tenant only once checked that he had a

6

prior bankruptcy filing. Tenant has demonstrated that he will knowingly make misrepresentations in legal pleadings. This impugns his credibility. Moreover, he filed under the names Parnell Colvin, Parnell Colvin Sr. and Parnell Colvin III. He also used three different social security/TIN numbers.

24. Tenant's wife, Monique Brown, filed four bankruptcy petitions. The timing of Ms. Brown's petitions were staggered with certain of Tenant's petitions which created something of a "tag-team" effect which would prolong the automatic stay that could be claimed by them as tenants against a landlord seeking eviction. Tenant, who suggests he has had to "school" me in the law, may know that a third bankruptcy petition, where the two prior were dismissed, will not afford any automatic stay. The tag-team scheme prevented that rule coming into effect.

25. Tenant suggests his petitions were not for the purpose of delaying evictions and that the dismissals were based upon advice of counsel (but all were filed pro se), failure to navigate the complexities of bankruptcy filings, or failed computer equipment precluding him from completing the online financial responsibility course requirement. These excuses are interesting considering how Tenant has touted his knowledge of the law.

**ADVERSE RULINGS MAY NOT BE BASIS FOR DISQUALIFICATION**

26. Tenant has been before me in prior cases where eviction was granted. Tenant disagreed with my determinations.

27. A tenant however may not seek to disqualify a judicial officer because of any prior adverse judgment, which appears to be the case in this proceeding (notwithstanding my issuance of favorable intervening orders). Rulings and orders of a jurist against a party are not legally cognizable grounds for disqualification. *See*, In re Petition to Recall Dunleavy, 104 Nev. 784, 789-90 (1988).

28. In my opinion, there is no statute, court rule, ethical standard, or other compelling reason for me to be disqualified from hearing and ruling on this matter.

29. Tenant has failed to provide any evidence of bias. Tenant's Motion to Recuse should therefore be denied.

Further your Affiant sayeth naught.

SUBSCRIBED and SWORN to before me this 15th day of December 2022.

_____
NOTARY PUBLIC

DATED this 15 day of December 2022.

_____
David F. Brown
Hearing Master, Las Vegas Justice Court



ADRIANA M. MARTINEZ
Notary Public, State of Nevada
No. 01-70767-1
My Appt. Exp. June 1, 2023

8