Martin A. Little, Nevada Bar No. 7067
Robert L. Rosenthal, Nevada Bar No. 6476
Robert Hernquist, Nevada Bar No. 10616
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: rlr@h2law.com
Email: mal@h2law.com
Email: rwh@h2law.com

*Attorneys for Defendant M.J. Dean Construction, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PARNELL COLVIN, | Case No. 2:20-cv-01765-APG-EJY |
| Plaintiff, | **DEFENDANT'S TRIAL BRIEF** |
| vs. | |
| M.J. DEAN CONSTRUCTION, INC, | |
| Defendant. | |

Defendant M.J. Dean Construction, Inc. ("Defendant" or "MJ Dean"), by and through its attorneys of record, the law firm of Howard & Howard Attorneys PLLC, hereby submits Defendant's Trial Brief in connection with the upcoming trial.

**I.
INTRODUCTION AND PROCEDURAL BACKGROUND**

This is an employment discrimination case, where Plaintiff, Parnell Colvin, who is African American, is suing his former employer, Defendant, M.J. Dean Construction, Inc. ("Dean"). Plaintiff's claims arise out of racism he allegedly experienced while working for Defendant as a laborer on the Madison Square Garden Sphere project (the "Sphere Project"), and Defendant's subsequent termination of his employment. Plaintiffs First Amended Complaint alleges the following causes of action against Defendant:

1. **Retaliation.** Plaintiff claims that Defendant terminated his employment in retaliation for complaining that his General Foreman, Kevin Gutierrez ("Gutierrez"), had discriminated and/or harassed him on the basis of his race approximately five months earlier.

1

Plaintiff was laid off—along with about 500 other employees—solely due to COVID-19. Further, Gutierrez had no input in the decision to lay off Plaintiff.

**2. Racial Discrimination.** Plaintiff maintains that he was denied overtime opportunities because of his race. Defendant asserts that Plaintiff was afforded the same opportunity to work overtime as all other similarly situated employees, and that Plaintiff did in fact work overtime when it was available.

**3. Hostile Work Environment Racial Harassment.** Plaintiff alleges that he was subjected to racial harassment as a result of the following discrete incidents: (a) Gutierrez called him the N-word one time; and (b) Plaintiff saw offensive graffiti twice in portable restrooms at the Sphere Project. Defendant denies that Gutierrez ever called Plaintiff the N-word, and that Plaintiff invented this allegation in order prevent Defendant from firing him. Defendant also maintains that Plaintiff never complained about offensive graffiti in the restrooms and that any graffiti was always promptly reported to the Sphere Project's General Contractor, AECOM Hunt, who was in charge of the restrooms. Defendant contends that the above incidents were not sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create a racially abusive or hostile work environment.

**4. Negligent Training and Supervision.** Plaintiff claims that Defendant failed to properly train its management employees to address harassment in the workplace. Defendant denies the allegation and asserts that its management level employees, including Gutierrez, received harassment training and that employees were properly and reasonably supervised.

**II.
FACTUAL BACKGROUND**

In July 2019, Dean hired Colvin to work as a Union Laborer on the Sphere project. Gutierrez was initially assigned to be Plaintiff's General Foreman. Gutierrez will testify that Plaintiff frequently refused to follow his orders. Gutierrez will also state that, on November 14, 2019, he instructed Plaintiff to help out in a different work area, but Colvin refused to comply with his order and started yelling at him. Gutierrez then told Plaintiff, "I'm done with you" and walked away. The evidence indicates that Plaintiff believed Gutierrez was going to fire him;

2

therefore, in order to prevent himself from getting fired, Colvin immediately submitted an internal complaint alleging that Gutierrez had just called him the N-word, assigned him degrading tasks that non-African Americans did not have to perform, and did provide him with overtime opportunities were provided to non-African American employees.

MJ Dean's witnesses will testify that, upon receiving Plaintiff's complaint, it immediately conducted an internal investigation. Gutierrez will testify that, (1) he never called Colvin the N-word; (2) he never assigned Colvin and other African Americans degrading tasks due to their race; (3) Colvin never asked to be assigned overtime (and Colvin's payroll records reflect that he worked overtime shortly after he started at MJ Dean). MJ Dean ultimately found that there were no witnesses who could corroborate Colvin's story. MJ Dean's witnesses will testify that later in the day on November 14, 2019, Colvin *chose* to be transferred to the yard at the Sphere Project under the supervision of Dave Muti. Colvin admitted that he did not work directly with Gutierrez or have any complaints or concerns regarding Gutierrez for the rest of his employment.

Colvin will likely testify that, on December 24, 2019 and January 3, 2020 (a little over one month later he filed his internal complaint), he observed offensive graffiti in two portable restrooms on the jobsite and reported it on each occasion to MJ Dean's safety personnel. Colvin admitted in his deposition that the graffiti was removed from one of the restrooms and that he was not sure if it was removed from the other. MJ Dean's witnesses will testify that Colvin never complained about graffiti at any time.

In early April 2020, MJ Dean was directed to shut down all of its work by April 15, 2020, due to the developing COVID-19 pandemic. Dean then proceeded to lay off more than 500 employees during the next two weeks. Colvin was among those laid off, and was let go on April 6, 2020. Although Gutierrez prepared Colvin's termination paperwork and physically handed Colvin the termination notice on April 6, 2020, Gutierrez did not decide who to lay off and did not have any input in the process. All decisions regarding layoffs, including Colvin's, were made by Superintendent John Thomason. A few weeks later, MJ Dean rehired about 200 of the employees who had been laid off, but Colvin was not included. The decision about who to rehire was left to MJ Dean's four superintendents. Once again, Gutierrrez did not decide or have any

input regarding who to rehire.

Based on the foregoing, MJ Dean will argue that (1) Plaintiff was never subjected to a hostile work environment; (2) Gutierrez never discriminated against or harassed Plaintiff; and (3) Plaintiff's layoff was completely unrelated to him filing an internal complaint about 5 months earlier; rather it solely due to MJ Dean being ordered to shut down the jobsite because of the pandemic.

## III.
## LEGAL ANALYSIS

### A.    RACIAL DISCRIMINATION

Under Title VII, establishing a claim of unlawful discrimination requires that Colvin show that: "(1) he belongs to a protected class; (2) he was qualified for [his] position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. Cal. Davis Bd. Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

The evidence will demonstrate that Colvin was treated the same as all other similarly situated employees and that he made up all of his claims in order to try to prevent Defendant from firing him.

### B.    RACIAL HARASSMENT

Under Title VII, establishing a harassment claim requires Colvin to show "(1) that [he] was subjected to verbal or physical conduct based on [his] race or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005) (simplified). Conduct is sufficiently severe and pervasive to alter the conditions of employment if it "pollutes the victim's workplace, making it more difficult for [him] to do [his] job, take pride in [his] work, and to desire to stay on in [his] position." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (simplified). To satisfy the third element, Colvin "must [also] show that [his] work environment was both subjectively and objectively hostile." *Galdamez*, 415 F.3d at 1023. Analyzing objective hostility requires

4

consideration of the totality of the circumstances, and "must be considered from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *Id.* (simplified).

Defendant will demonstrate that Plaintiff cannot satisfy the necessary elements to this claim because the alleged harassing conduct did not occur, and even if it did, it was not sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment.

### C. RETALIATION

Under Title VII, establishing a claim of retaliation requires that Colvin "show that he engaged in a protected activity, [that] he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). The causal link element "can be inferred from circumstantial evidence such as the employer's knowledge of the protected activit[y] and the proximity in time between the protected activity and the adverse action." *Id.* Once a plaintiff establishes a prima facie case, "the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons." *Id.* If the employer provides a legitimate explanation, the burden shifts back to the plaintiff to "show that the [employer's] explanation is merely a pretext." *Id.*

In this case, Plaintiff cannot demonstrate that his layoff occurred because he complained about Gutierrez almost five months earlier. Instead, the evidence will show that Plaintiff, along with over 500 other MJ Dean employees were all ordered by the owner of the Sphere Project, MSG Entertainment, to be laid off in within the first two weeks of April 2020, due to the COVID-19 pandemic. Furthermore, Defendant will prove that Gutierrez did not decide or have any input into who was laid off.

### D. NEGLIGENT TRAINING AND SUPERVISION

To establish a claim of negligent training and supervision under Nevada law, Colvin must show: "(1) the employer knew that the employee acted in a negligent manner, (2) the employer failed to train or supervise the employee adequately, and (3) the employer's negligence proximately caused the plaintiff's injuries." *Helle v. Home Health Servs. of Nev.*, No. 48427, 2008 WL 6101984, at *3 (Nev. 2008) (*citing Hall v. SFF, Inc.*, 930 P.2d 94, 98 (Nev. 1996*)); Oehler*

5

*v. Humana, Inc.*, 775 P.3d 1271, 1272 (Nev. 1989)).

The evidence will demonstrate that, (1) Plaintiff and all other relevant MJ Dean employees received discrimination and harassment training; (2) Plaintiff was aware of MJ Dean's discrimination, harassment and complaint procedures and unreasonably failed to use them; (3) Plaintiff knew he could always complain to his Union and failed to do so; (4) Plaintiff never complained about racist graffiti in the restrooms—or anywhere else; (5) AECOM Hunt, not MJ Dean, was not responsible for the restrooms at the Sphere Project and for removing any graffiti; (6) all subcontractors had access to the restrooms at the Sphere Project; and (7) at all relevant times, MJ Dean's safety personnel promptly reported any graffiti to AECOM Hunt.

### E. DAMAGES

Plaintiff has never provided a computation of damages that complies with legal requirements.

## IV. CONCLUSION

Once the evidence has been presented, Plaintiff will be unable to satisfy the elements of his claims. Whether from the jury or this Court, a complete defense verdict will be the only reasonable result.

Dated: March 21, 2023               Respectfully submitted,

                                    HOWARD & HOWARD ATTORNEYS PLLC

                                    By: /s/ Robert Rosenthal
                                        Robert Rosenthal, Esq.
                                        Martin A. Little, Esq.
                                        3800 Howard Hughes Parkway, Suite 1000
                                        Las Vegas, Nevada 89169
                                        *Attorneys for Defendant M.J. Dean Construction, Inc.*

6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically filed and served upon the following parties on March 21, 2023 through the Court's ECF system.

LAW OFFICES OF MICHAEL P. BALABAN
Michael P. Balaban, Esq.
10726 Del Rudini Street
Las Vegas, NV 89141

*Attorneys for Plaintiff*

                                        /s/ Barbara Dunn
                                        Howard & Howard Attorneys PLLC