Michael P. Balaban   State Bar No. 9370
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV  89141
(702)586-2964
Fax: (702)586-3023
E-Mail: mbalaban@balaban-law.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PARNELL COLVIN, | CASE NO. 2:20-cv-01765-APG-EJY |
| Plaintiff, | PLAINTIFF'S TRIAL BRIEF |
| vs. | |
| M.J. DEAN CONSTRUCTION, INC., | |
| Defendant. | Trial: March 27, 2023 |
| | Time: 9;00 a.m. |
| | Judge: Honorable Andrew Gordon |

Plaintiff PARNELL COLVIN ("Plaintiff" or "Colvin") submits his trial brief in the above referenced case.

## I.

## INTRODUCTION

Plaintiff Parnell Colvin ("Plaintiff" or "Colvin") sues his former employer M.J. Dean Construction, Inc. ("Defendant" or "M.J. Dean Construction") for discrimination, harassment, retaliation and negligent training and supervision.

Colvin's claims arise out of racism and harassment he experienced while working for M.D. Dean Construction as a laborer on the Madison Square Garden Sphere project and Defendant's subsequent termination of his employment and refusal to re-hire Plaintiff.

**II.**

**STATEMENT OF FACTS**

In July 2019, Defendant hired Colvin to work as a laborer on the Madison Square Garden Sphere project.  Kevin Gutierrez was Colvin's supervisor.  The evidence at trial will show that beginning his first day and continuing onwards, Gutierrez treated Plaintiff poorly.

The evidence at trial will show that Gutierrez looked at Colvin "like [he] was a piece of shit," assigned him too many tasks to complete in a day, and sent him to other crews that did not have work for him.

The evidence will further show that Gutierrez refused to give him opportunities to work overtime on the job.  In November 2019, Plaintiff confronted Gutierrez regarding his perceived mistreatment.

The evidence will show that Gutierrez started "screaming and yelling and throwing his hands up," and said "I'm not fucking doing this, you fucking nigger."

After this incident, Colvin complained to management and an investigation ensued which resulted in Plaintiff being transferred to a new supervisor, Dave Muti.  Colvin worked under Muti for the remainder of his employment with M.J. Dean Construction.

The evidence at trial will show that on December 24, 2019 and January 3, 2020, Plaintiff observed offensive graffiti in two separate restrooms on the jobsite.  This graffiti read "burn all niggers," "white power," and "black laborers = lazy[,]" while also depicting a possible swastika and other vulgarities.

Plaintiff promptly reported the graffiti to safety personnel.  Thereafter the graffiti was removed from one of the bathrooms, but Colvin does not know whether it was removed from the other.

In early April 2020, the Madison Square Garden Company directed the Sphere project to shut down by April 15th due to the developing COVID-19 pandemic.  M.D. Dean Construction allegedly laid off 500 employees during the shutdown.  Plaintiff was among those laid off, receiving his termination notice from Gutierrez on April 6, 2020.

Finally although Defendant rehired 200 employees, Colvin was not one of the laborers rehired even though he tried to get rehired a number of times after the layoff.

### III.

### LEGAL DISCUSSION

#### A. DISCRIMINATION

Under Title VII, establishing a claim of unlawful discrimination requires that Colvin show that: "(1) he belongs to a protected class; (2) he was qualified for [his] position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. Cal. Davis Bd. Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

Here the evidence will show at a minimum that Gutierrez provided similarly situated Hispanic workers with overtime opportunities but denied them to Colvin.

An "adverse employment action" for purposes of Title VII discrimination is broadly defined and includes circumstances in which "an employer's action negatively affects its employee's compensation," like a denial of overtime opportunities. *Fonseca v. Sysco Food Srvs. of Ariz., Inc.*, 374 F.3d 840, 847-49 (9th Cir. 2004).

#### B. HARASSMENT

Under Title VII, establishing a harassment claim requires Colvin to show "(1) that [he] was subjected to verbal or physical conduct based on [his] race or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).  Conduct is sufficiently severe and pervasive to alter the

3

conditions of employment if it "pollutes the victim's workplace, making it more difficult for [him] to do [his] job, take pride in [his] work, and to desire to stay on in [his] position." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

To satisfy the third element, Plaintiff "must [also] show that [his] work environment was both subjectively and objectively hostile." *Galdamez*, 415 F.3d at 1023.   Analyzing objective hostility requires consideration of the totality of the circumstances, and "must be considered from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *Id.*

Here the evidence will show that the conduct to which Colvin was subjected was sufficiently hostile to constitute an abusive work environment.   Further Plaintiff subjectively found the confrontation with Gutierrez to be disturbing enough that he reported it to management.

The evidence will also show that Colvin reported both graffiti incidents to safety personnel and the graffiti was sufficiently upsetting that Plaintiff avoided using those restrooms.

Further the circumstances were also objectively hostile.   The Ninth Circuit has recognized that "[i]t is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination.   This word is perhaps the most offensive and inflammatory racial slur in English, . . . a word expressive of racial hatred and bigotry." *McGinest*, 360 F.3d at 1116.

The graffiti Colvin observed was of a similar nature.   Writing in one restroom read "burn all niggers," and "white power," while also depicting a possible swastika and other vulgarities. Writing in the other restroom read "black laborers = lazy!"

Further even though the Ninth Circuit has previously found that two instances of being subjected to the racial epithet "nigger" were insufficiently severe and pervasive to support a hostile work environment claim, *see Harris v. Sutton Motor Sales & RV Consignments Corp., 406 Fed. App'x 181, 182-83 (9th Cir. 2010)*, the court in *Harris* noted that the epithets there were not accompanied by any physical threats or symbols of racial violence. *Id.*

The facts here are different because the graffiti implicated the physical threat of burning, as

well as a possible swastika, thereby enhancing the severity of the harassment.

## C. RETALIATION

Under Title VII, establishing a claim of retaliation requires that Plaintiff "show that he engaged in a protected activity, [that] he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

The causal link element "can be inferred from circumstantial evidence such as the employer's knowledge of the protected activit[y] and the proximity in time between the protected activity and the adverse action." *Id.* Once a plaintiff establishes a prima facie case, "the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons." *Id.* If the employer provides a legitimate explanation, the burden shifts back to the plaintiff to "show that the [employer's] explanation is merely a pretext." *Id.*

Here even though Colvin's termination occurred more than four months after his confrontation with Gutierrez, it is reasonable to infer a causal connection based on the totality of circumstantial evidence, including Gutierrez's possible participation in the termination. Here the evidence will show that Gutierrez, Plaintiff's alleged harasser, was in charge of the layoff decision instead of Colvin's supervisor at the time, Muti.

Further from the evidence that will be presented at trial, it is also reasonable to infer that Colvin was not rehired because of Plaintiff making an internal complaint against Gutierrez because of the harassment he experienced

## D. NEGLIGENT TRAINING AND SUPERVISION

To establish a claim of negligent training and supervision under Nevada law, Colvin must show: "(1) the employer knew or should have known that the employee acted in a negligent manner, (2) the employer failed to train or supervise the employee adequately, and (3) the employer's negligence proximately caused the plaintiff's injuries." *Helle v. Home Health Servs. of*

1   *Nev.*, No. 48427, 2008 WL 6101984, at *3 (Nev. 2008) (citing *Hall v. SFF, Inc.*, 930 P.2d 94, 98

2   (Nev. 1996)); *Oehler v. Humana, Inc.*, 775 P.3d 1271, 1272 (Nev. 1989)).

3          The evidence at trial will show that Defendant did not adequately train or supervise their

4   employees including Gutierrez, that they didn't train and supervise their employees adequately to

5   deal with the racist graffiti found in the restroom that their employees reasonably used and that

6   they did not train and supervise their employees adequately to deal with other race-based

7   discrimination or harassment in the workplace.

8   **E. DAMAGES**

9          Plaintiff will prove legal sufficient damages at trial including lost past and future wages,

10  emotion distress and suffering and punitive damages.

11                                          **IV.**

12                                    **CONCLUSION**

13         The evidence at trial will show that Plaintiff has proved his case by a preponderance of the

14  evidence resulting in damages as the jury sees fit to award.

15

16  DATED:  3/21/2023                    LAW OFFICES OF MICHAEL P. BALABAN

17

18                               BY: /s/ Michael P. Balaban
                                     Michael P. Balaban, Esq.
19                                   LAW OFFICES OF MICHAEL P. BALABAN
                                      10726 Del Rudini Street
20                                    Las Vegas, NV  89141

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that pursuant to FRCP Rule 5(b)(3) and LR IC 4-1(a), a true and correct

3  copy of the foregoing document was electronically served via the Court's CM/ECF electronic filing

4  system to the following persons on March 21, 2023:

5

6                              Martin A. Little, Esq.

7                              Robert L. Rosenthal, Esq.
                         HOWARD & HOWARD ATTORNEYS PLLC

8                              *Attorneys for Defendant*

9
                                        /s/ Michael P. Balaban
10                                      Michael P. Balaban

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28