UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PARNELL COLVIN,

    Plaintiff.

V.

M.J. DEAN CONSTRUCTION INC

    Defendant.

Case No. 2:20-cv-01765 -APG-EJY

Plaintiff Opposition To Attorney Lien



    COMES NOW Plaintiff Parnell Colvin and files his response to attorney lien filed by his former attorney Jesse Sbaih. Plaintiff Colvin former attorney Micheal P. Balaban, who sent Colvin an email dated February 15, 2024 and claimed to have attached a draft response to the court's order but no attachment was sent with the email for Colvin to review and have Mr. Balaban file a response. Colvin is filing his response to the court order and tells the true facts as they happened . Colvin did not have time to gather and cite legal arguments before today's date but wanted to at least give the court a clear understanding of what transpired.

    When Colvin was seeking representation in this case he was looking for an attorney that would take his case to trial, not just looking for a quick settlement but would take his case to trial as Colvin wanted his day in court. Colvin had three different attorneys representing him at some point during this litigation. The attorneys are as following Mr. Sbaih, Mr. Marks and Mr. Balanban and Colvin had never asked or requested any of the attorneys to approach M.J. Dean at any point for a settlement offer or to negotiate a settlement.

1-5

Colvin contacted the office of Mr. Sbaih to get a consultation about this case Colvin never spoke with Mr. Sbaih who spoke with his partner Ines Olevic-Saleh over the phone. During this conversation Colvin made it clear that he wanted to go to trial and was looking for representation to do so. Shortly after the phone conversations Ms. Saleh informed Colvin that her office would represent Colvin in this matter and scheduled a meeting for Colvin to come and sign the retainer agreement. Mr. Sbaih was not present; he came in at the end to introduce himself.

Ms. Saleh said first she would submit a demand letter to the defendants and it would get their attention and she thought a settlement would be possible but if no response she would then file the lawsuit she requested $ 140,000 as I recall. The defendant never replied which frustrated her this was evident by our follow up conversations. Ms. Saleh's demand letter stated that if we did not hear back from the defendants by a certain time she would file a lawsuit.

The time came and gone with the defendant not responding, Colvin then asked Ms. Saleh when she was going to file the lawsuit. It was clear to me in my opinion delays in filing the lawsuit because now that the defendants did not make an offer or respond the next stage was litigation. After weeks of delays the lawsuit was finally filed with me asking why the delay was never getting a response.

Once the lawsuit was filed the only conversation that was being talked about was the Early Case Evaluation Hearing. Again Mr. Sbaih saw this as another opportunity to settle the case without having to litigate. During the hearing Mr.Sbaih wanted to start at $500,000 the mediator told him there is no way the defendant would agree to that amount. Mr.Sbaih then lowered it to $400,000 again the mediator told him it was too high. At this point Mr. Sabiah started at $300,000.

The defendant counters by offering a few thousand dollars then Mr.Sbaih lowered his offer to $200,000 again the defendants only offered a thousand to two thousand more at this point the defendants offer is less than $5000. At this point Mr. Sbaih says the defendants are not going to offer any real money and asked what I wanted to do I replied I wanted to go to trial he then replied ok. Then Mr. Sbaih says lets try one more offer he offered $100.000 I replied I wanted to go to trial he stated it was my call but he was looking out for his own self interest not mine. The defendants countered with about $1200.

Mr. Sbaih again asked me what I wanted to do. I replied go to trial he again said ok but once again he states lets try one more time he offered $60,000. The defendants again countered with a low offer as I recall $2000. At this point Mr. Sbaih finally said let's

2-5

end the hearing because the defendants are not going to offer any real money. This was the first time I had interacted with Mr. Sbaih all my interactions prior to this hearing was with Ms. Saleh. Shortly after the hearing I was contacting Ms. Saleh to see when we were going to take the defendants depositions. He replied he did not want to do depositions because they are expensive and he was ready for trial with doing very little or any meaningful discovery.

I explained discovery was very important and relevant to get more evidence and to depose the defendants and their credibility. Colvin is not an attorney but a case of such wrongdoing by the defendant's conduct warrants depositions to gather very important information from the defendants. Mr.Sbaih then stated he was going to withdraw and filed a motion to do so. Mr. Sbaih in my opinion never had my best interest; he was only looking to get a quick settlement with having little to no real services provided. From my interactions when he could not achieve his goal of a quick settlement he was looking to withdraw from my case.

My second attorney was Daniel Marks when he took on my case he checked to see if there was a lien filed at the time and Colvin told none was. Mr. Marks also stated during my consultation that he spoke with Mr. Sbaih. Colvin believes Mr. Sbaih is not entitled to attorney fees; he volunteered to withdraw from the case and left his client high and dry once he could not obtain a settlement from the defendant. Lucky Mr. Colvin was able to retain new counsel with Mr. Marks.

Mr. Marks represented Covin for two years and performed the necessary depositions that Mr.Sbaih refused to do. The depositions were very important and Colvin believes this was a reason M.J. Dean days before trial wanted to offer a settlement. During the depositions it was stated by Kevin Gutterize that he had used the " NIGGER" word before did prison time. Also during depositions Colvin also found out that John Thomason was a part owner of M.J. Dean and was involved in another lawsuit. This information would have never been revealed had no depositions been done.

Mr. Sbaih conduct was reckless and unprofessional and Mr. Marks had to clean up his mishaps . Mr. Marks put a lot of time and invested money into litigating my case, a far cry for the representation done by Mr. Sbaih and putting Colvin in a very difficult position by not performing competent representation and filing a lien. Colvin believes The conduct of Mr. Sbaih should be a basis for not awarding attorneys fees.

Colvin third attorney Mr. Balaban before representing Colvin asked had Mr. Marks placed a lien on his case and after Colvin contacted Mr. Marks. Colvin was told he was not going to place a lien on his case this information was provided to Mr. Balaban and that is when he said he would represent Colvin. During the course preparing for trial Mr.Balaban would take weeks to respond to emails, texts and voicemails. Colvin understands some attorneys have multiple cases going but the laps to respond was unacceptable.

Balaban, representing Colvin, has never asked him to contact the defendants about any settlement as Colvin wanted his day in court in front of a jury.
Mr. Balaban had attended the final hearing before the court just days before the trial was to start. Colvin will never forget he received a phone call from Mr. Balaban Colvin was unable to answer but Mr. Balaban kept calling back to back.

When responding, Mr. Balaban called and stated that he had got a call from the defense and they told him that upon looking in the case file they see this case has not had any settlement discussions. They knew that this is just part of the game attorneys play in the court systems. This caught me completely off guard because we were days before trial and both parties had just days before stated to the court they were ready for trial.

For over two days of pressure from Mr. Balaban forced me to take a deal I did not want to settle. I asked Mr. Balaban knew how much benefits , pension , vacation pay , lost wages and job opportunities were lost because of the defendants illegal conduct. Mr. Balabam replied he did not know so how can you say what a fair offer is he had no reply. Mr.Balaban is calling me and emailing constantly. I was shocked at the many times and so regularly he was calling and emailing. Mr. Balaban stated that the defense attorney was at his office waiting for a response at around 8 pm. I reluctantly agreed to a settlement.

Colvin is aware that the law allows him to change his mind within 7 days of agreeing to a settlement. After much thought and not having the pressure of Mr. Balaban pressured Colvin to take a settlement. Colvin contacted Mr. Balaban and stated he was going to withdraw from the settlement. Mr. Balaban immediately contacted Colvin and asked why as stated Mr. Balaban had done no calculations by his own admission so he did not know the value of my case. For those reasons Colvin was going to reject the settlement.

4 - 5

Mr. Balaban was trying his best to get Colvin to keep the settlement from stating you can go trial and lose and get nothing, you are going to have a most likely all white jury ect. With all his statements I still responded I wanted to go to trial Mr. Balaban then stated to me he could withdraw from my case which surprised me because it is my right to a trial and my right to reject a settlement within the 7 days allowed by law. I asked him on what grounds he said he would file a motion to the court and allege I was not truthful with him. I responded are you serious? You would file a motion and make a false claim to the court because I don't want to take the settlement. My story has never changed. I can tell the story almost 4 years later without reading any transcripts or reviewing documents.

Because Mr. Balaban had threatened to file a false motion to withdraw and I was not sure I could find another attorney to represent me; this is the only reason I accepted the settlement. After this I did not feel comfortable having Mr. Balaban represents me. His conduct was so outrageous and unethical it really bothered me and I did not want him representing me any more. I don't trust him for what he said and was willing to do. I contacted the defense to have them deal with me but I was told because I am represented by counsel they can't deal with me directly.

Colvin is willing to be present at a hearing the court orders in this matter but that his prior attorney fees should not be awarded. He abandoned his client!

Dated and submitted this day February 20,2024

*[signature]*
PARNELL COLVIN

5-5